1  PAUL A. HILDING, ESQ.
   State Bar No. 110656
2  PETER Q. SCHLUEDERBERG, ESQ.
   State Bar No. 137995
3  HILDING LAW FIRM
   501 W. Broadway, Suite 1760
4  San Diego, California 92101
   Tel:   (619) 233-4200
5  Fax:   (619) 233-4211

6  Attorneys for Plaintiff
   NATH & ASSOCIATES, PLLC
7

FILED
2008 AUG 25  PM 4: 35
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY: _____ DEPUTY

8              UNITED STATES DISTRICT COURT

9              SOUTHERN DISTRICT OF CALIFORNIA

10                                  '08 CV 1567 L JMA

11  NATH & ASSOCIATES, PLLC,          )  Case No.
                                      )
12              Plaintiff,            )  COMPLAINT FOR BREACH OF
                                      )  CONTRACT AND BREACH OF THE
13       v.                           )  IMPLIED COVENANT OF GOOD
                                      )  FAITH AND FAIR DEALING
14  HARTFORD CASUALTY INSURANCE       )
    COMPANY,                          )  DEMAND FOR JURY TRIAL
15                                    )
                Defendant.            )
16                                    )
    _____

17

18       Plaintiff Nath & Associates, PLLC ("Nath"), for its Complaint against Defendant

19  Hartford Casualty Insurance Company ("Hartford"), alleges as follows:

20                    I. **NATURE OF ACTION**

21       1.      This insurance coverage dispute arises out of Hartford's unreasonable failure and

22  refusal to satisfy its contractual obligations to defend and pay for the defense of Nath and its

23  insured members with respect to certain underlying litigation involving claims for personal and

24  advertising injury expressly covered by the insurance policies issued to Nath by Hartford.

25                 II. **JURISDICTION AND VENUE**

26       2.      Plaintiff alleges on information and belief that this Court has subject matter

27  jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).  Plaintiff further alleges on

28

1  information and belief that there is complete diversity of citizenship between Nath and Hartford,

2  and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

3        3.      Plaintiff alleges on information and belief that this Court has personal jurisdiction

4  over Defendant in this matter.

5        4.      Venue is proper pursuant to 28 U.S.C. § 1391(a)(1) because, on information and

6  belief, Defendant resides in this judicial district and in the State of California.

7        5.      In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(2) because, on

8  information and belief, a substantial part of the events giving rise to the claims at issue in this

9  action occurred in this judicial district.

10        6.      In the alternative, venue is proper pursuant to 28 U.S.C. § 1391(a)(3) because, on

11  information and belief, Defendant Hartford is subject to personal jurisdiction in this district.

12                  **III. <u>PARTIES</u>**

13        7.      Plaintiff Nath & Associates, PLLC is a law firm and a professional limited

14  liability company, organized under the laws of the District of Columbia, authorized to do

15  business and doing business in the County of San Diego, State of California. Nath is also known

16  as "The Nath Law Group" and "Nath & Associates" and operates an office located in San Diego,

17  California.

18        8.      Nath alleges on information and belief that Defendant Hartford Casualty

19  Insurance Company is an insurance company incorporated under the laws of the State of Indiana

20  and is authorized to transact business and is transacting business in this judicial district in the

21  State of California. Nath further alleges on information and belief that Hartford's principal place

22  of business is in Hartford, Connecticut.

23                **IV. <u>FACTUAL BACKGROUND</u>**

24  **A.     THE POLICY**

25        9.      Hartford issued insurance policies to Nath, providing business liability coverage,

26  among other coverages, for annual policy terms commencing on October 1, 2003.

27        10.     Nath renewed such insurance policies with Hartford each year, with the current

28  policy expiring October 1, 2008 ("the Hartford Policies").

11.    Nath alleges on information and belief that the Hartford Policies provided Nath with liability insurance coverage for suits seeking damages for "personal and advertising injury".

12.    One of those policies issued by Hartford to Nath was policy number 30 SBA RM7202 SA (also referred to as Policy No. 30 SBA RM7202), effective for the policy period October 1, 2006 to October 1, 2007 ("the Policy").

13.    Nath alleges on information and belief that a true and correct copy of the Policy's applicable business liability coverage forms, endorsements and declarations is attached as Exhibit 1 to this Complaint and is incorporated herein by this reference.

14.    The applicable business liability coverage form for the Policy is Hartford Business Liability Coverage Form SS 00 08 04 01.

15.    Nath alleges on information and belief that the applicable business liability coverage form for all of the Hartford Policies is Business Liability Coverage Form SS 00 08 04 01.

16.    The Business Liability Coverage insuring agreement in the Policy provides, in pertinent part, as follows:

**Insuring Agreement**

a.   We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.

17.    The Policy's  insuring agreement further provides, in pertinent part, as follows:

b.   This insurance applies to:
. . . .

(2) "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

18.    The Policy defines "personal and advertising injury" to include the following:

"Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
. . . .

**f.** Copying, in your "advertisement", a person's "advertising idea" or style of "advertisement";

19. The term "advertisement" is defined in the Policy, in pertinent part, as follows:

"Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services, through:

**a.** **(1)** Radio;
   **(2)** Television;
   **(3)** Billboard;
   **(4)** Magazine;
   **(5)** Newspaper;

**b.** The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

**c.** Any other publication that is given widespread public distribution.

20. The term "advertising idea" is defined in the Policy as follows:

"Advertising idea" means any idea for an "advertisement".

21. Nath is a named insured under the Policy.

22. The Policy also provides that Nath's members are included as insureds with respect to the conduct of Nath's business.

23. The Policy further provides that Nath's managers are included as insureds with respect to their duties as Nath's manager.

24. Nath's employees are also included as insureds under the Policy for acts within the scope of their employment by Nath or while performing duties related to the conduct of Nath's business.

**B.      THE UNDERLYING LAWSUIT**

25. On or about July 6, 2007, underlying plaintiffs Hilborne, Hawkin & Co, a California Corporation, and Asia Trademark, Ltd. (collectively "Hilborne"), through their counsel, the San Diego office of Shepherd, Mullin, Richter & Hampton, filed a Complaint for Damages and Injunctive Relief against Nath (sued therein under the names "The Nath Law Group" and "Nath & Associates"), and two of its members, Ross Adam Epstein (the managing partner of the San Diego office of Nath), and Gary M. Nath, as well as two other defendants, Ira

1  Eckstein ( a San Diego lawyer), and A&S Patents and Trademarks, Inc. a California Corporation,

2  located in San Diego ("A&S"), in the Superior Court of the State of California for the County of

3  San Diego, North County Judicial District, Case No. 37-2007-00054248-CU-BT-NC, styled

4  *Hilborne, Hawkin & Co., et al. v. Ira Dickstein, et al.* ("the Underlying Lawsuit").

5          26.    A true and correct copy of the complaint filed in the Underlying Lawsuit is

6  attached hereto as Exhibit 2 and is incorporated herein by this reference.

7          27.    In their complaint, Hilborne alleged causes of action for Intentional and Bad Faith

8  Misappropriation of Trade Secrets-Cal. Civil Code § 3426 *et seq*, Unfair Competition, and Civil

9  Conspiracy against all underlying defendants, as well as a cause of action for breach of contract

10  against Nath and two of its members, Mr. Epstein and Mr. Nath (collectively "the Nath

11  Defendants").

12          28.    Hilborne alleged that they had developed trade secrets which they referred to in

13  the underlying complaint as "the Model."

14          29.    In the underlying complaint, Hilborne alleged that the Model consisted of a

15  "proprietary business, advertising and marketing methodology."

16          30.    The underlying complaint alleged that the Nath Defendants copied Hilborne's

17  "advertising idea", as that term is defined by the Policy.

18          31.    The underlying complaint alleged that the Nath Defendants copied Hilborne's

19  "advertising idea", as that term is defined by the Policy, in Nath's "advertisement", as that term

20  is defined under the Policy.

21          32.    The underlying complaint alleged that the Nath Defendants copied Hilborne's

22  style of "advertisement", as that term is defined by the Policy, in Nath's "advertisement", as that

23  term is defined under the Policy.

24          33.    The underlying complaint alleged that the Nath Defendants committed wrongful

25  acts potentially constituting "personal and advertising injury" offenses as that term is defined

26  under the Policy.

27          34.    The underlying complaint sought damages from the Nath Defendants because of

28  "personal and advertising injury", as that term is defined in the Policy.

35.     The underlying complaint potentially sought damages from the Nath Defendants because of "personal and advertising injury", as that term is defined in the Policy, to which the Policy's insurance applies.

36.     The underlying complaint potentially sought damages because of "personal and advertising injury", as that term is defined in the Policy, potentially caused by an offense arising out of Nath's business.

37.     The underlying complaint potentially sought damages because of "personal and advertising injury", as that term is defined in the Policy, potentially caused by an offense committed in the "coverage territory", as that term is defined in the Policy.

38.     In the underlying complaint, Hilborne further alleged that Nath and the other codefendants formed A&S as part of a plan to compete with Hilborne through the allegedly wrongful use of the alleged trade secrets referred to in the underlying complaint as "the Model."

39.     The underlying complaint potentially sought damages based upon the Nath Defendants allegedly copying Hilborne's "advertising idea", as that term is defined in the Policy, or style of "advertisement", as that term is defined in the Policy, in Nath's advertisement of codefendant A&S.

## C.     HARTFORD'S WRONGFUL DENIAL OF COVERAGE

40.     Nath timely tendered the Underlying Lawsuit to Hartford and provided it with a copy of the underlying complaint.

41.     Thereafter, on or about August 21, 2007, Hartford's "Complex Case Manager," Warren Freiman, advised Nath in a telephone conference that Hartford would provide a defense to the "Nath defendants" in the Underlying Lawsuit.

42.     After agreeing to provide a defense, however, Hartford sent a letter to Nath on August 22, 2007, reneging on its promise and stating that it had no duty to defend.

43.     A true and correct copy of the August 22, 2007 letter is attached hereto as Exhibit 3 and is incorporated herein by this reference.

44.     Nath alleges on information and belief that in reaching its decision to deny its duty to defend on August 22, 2007, Hartford did not conduct any investigation beyond reviewing

1  the underlying complaint and the Policy, and its telephone conversations with Ross Epstein and

2  Elizabeth Crupper of Nath on or around August 21, 2007.

3      45.    In its August 22 letter denying coverage, Hartford correctly noted that its duty to

4  defend would be triggered, pursuant to the Policy's "personal and advertising injury" coverage,

5  if the underlying complaint contained allegations of fact that the insured is liable for damages to

6  Hilborne because the insured, in its advertisement, copied Hilborne's advertising idea or style of

7  advertisement.

8      46.    Moreover, Hartford's duty to defend pursuant to the Policy's "personal and

9  advertising injury" coverage would be triggered if the underlying complaint potentially alleged a

10  claim for damages because of an injury arising out of Nath copying, in its advertisement,

11  Hilborne's advertising idea or style of doing business, during the policy period and in the United

12  States, if Nath's alleged conduct potentially arose out of its business.

13      47.    In its August 22 letter, Hartford further admitted that "[i]ndeed, plaintiffs do

14  allege that their style of advertisement was copied."

15      48.    Nonetheless, Hartford's letter further stated that "the complaint makes absolutely

16  clear that it is not Nath that is charged with the copying, but the codefendant, A&S, which is not

17  insured by Hartford."

18      49.    In fact, among the allegations of the underling complaint, Hilborne specifically

19  alleges in paragraph 74 that "Defendants have also copied the substance of Plaintiffs' full page

20  advertisement in the INTA directory."

21      50.    Contrary to Hartford's assertion in the denial letter, the allegation in paragraph 74

22  of the underlying complaint is not limited to the codefendant, A&S, but is alleged against all of

23  the underlying defendants, including Nath.

24      51.    Hartford further wrongfully asserts in its August 22 letter that the underlying

25  complaint does not allege that the copying of Hilborne's idea or style of advertisement was

26  committed in Nath's advertisement.

27

28

52.     Again, however, paragraph 74 of the underlying complaint specifically alleged that the offending full page advertisement in the INTA directory was "Defendants' full page advertisement," rather than an advertisement of only one codefendant.

53.     Hartford actually cited to paragraph 74 in its August 22 letter to support its wrongful denial of coverage, even though the allegations in that paragraph, among numerous other allegations in the underlying complaint, directly triggered Hartford's duty to defend.

54.     In its August 22 letter, Hartford also attempted to avoid its duty to defend by citing an exclusion in the Policy for "personal and advertising injury" arising out of an offense committed by the insured with the expectation of inflicting "personal and advertising injury."

55.     In citing the Policy exclusion for offenses committed by the insured with the expectation of inflicting "personal and advertising injury", Hartford wrongfully ignored allegations in the underlying complaint that Nath and the other codefendants either knew or **"had reason to know"** that the purported trade secret advertising information was confidential and proprietary.

56.     Such allegations that the Nath Defendants should be held liable because they had "reason to know" created an expressly stated potential for liability based upon negligent conduct which would not be barred by the exclusion for offenses committed with the expectation of inflicting "personal and advertising injury."

57.     On or about August 24, 2007, Ross Epstein sent a letter to Hartford, on behalf of the insureds, expressing their shock at Hartford's sudden and unreasonable reversal of its coverage position.

58.     A true and correct copy of the August 24. 2007 letter is attached hereto as Exhibit 4 and is incorporated herein by this reference.

59.     In his August 24 letter, Mr. Epstein demanded that Hartford "review once again the allegations of the complaint" to note the fact that the Nath Defendants were all accused in the complaint of copying Hilborne's ideas and style of advertising.

60.     Mr. Epstein further pointed out that the underlying complaint exposed the Nath Defendants to claims for damages for unintentional and/or negligent copying and

1    misappropriation of purported trade secret advertising ideas, and that the underlying complaint

2    further sought to enjoin the Nath Defendants from copying Hilborne's advertising method.

3        61.    Mr. Epstein further explained the insureds' position in his August 24 letter, by

4    stating: "The potential for coverage under the portions of the policy you quote is absolutely real

5    and the Nath defendants must be afforded a duty to defend and coverage from Hartford under our

6    insurance contract."

7        62.    On or about September 17, 2007, Mr. Freiman sent another letter to Nath

8    confirming Hartford's denial of coverage based upon Hartford's review and interpretation of the

9    factual allegations of the underlying complaint.

10       63.    A true and correct copy of the September 17, 2007 letter is attached hereto as

11   Exhibit 5 and is incorporated herein by this reference.

12       64.    In the letter, Hartford's representative, Mr. Frieman, stated:

13           I have received and reviewed your August 24, 2007 letter and have
        once again, carefully studied the factual allegations of the

14           complaint to determine if a fair reading of the complaint discloses
        any potential for the insured to become legally liable for damages

15           that may be covered by insurance contract numbers 30 SBA
        RM7202 or 42 SBA BU0787.  Hartford concludes once more,

16           since the potential for Nath Law Group to become liable for
        damages is clearly absent, that it has no duty to provide a defense

17           for the instant suit.

18       65.    Despite its claim that it carefully studied the factual allegations of the complaint,

19   Hartford again made the absolutely wrong and unreasonable assertion in its September 17 denial

20   letter that the underlying complaint did not contain allegations that Nath had copied Hilborne's

21   advertising idea or style of advertisement.

22       66.    Indeed, in the September 17 letter, Hartford wrongfully asserted that "[t]here is no

23   claim that Nath advertised at all."

24       67.    Hartford further stated in its September 17 letter that "there is not a single

25   assertion of fact in the complaint that Nath's advertisement copied plaintiffs."

26       68.    Hartford's unfounded assertions in its September 17 letter are unreasoanble given

27   the fact that the underlying complaint is replete with allegations that all of the underlying

28   defendants, including Nath, copied Hilborne's advertising ideas or style of advertisement.

69.     In particular, paragraphs 73 through 77, 80, 83, 85 through 86, and 90 through 91 contain specific allegations that all of the underlying defendants, including Nath, copied Hilborne's ideas or style of advertisement, which Hilborne claimed were confidential and protected trade secrets, and that Nath and the other codefendants damaged Hilborne by using such advertisements to unfairly compete with Hilborne.

70.     Paragraph 85 even singled out Nath to allege that prior to misappropriating Hilborne's advertising idea, the only country which Nath listed in the INTA Membership Directory for its services was the United States.

71.     All of the allegations in paragraphs 73 through 77, 80, 83, 85 through 86, and 90 through 91 in the underlying complaint were incorporated in each and every cause of action for damages. Accordingly, the underlying complaint sought damages because of "personal and advertising injury" triggering Hartford's duty to defend the Nath Defendants under the Hartford Policies.

72.     Nath alleges on information and belief that in denying coverage to Nath and its codefendant insureds, Hartford relied upon its review and interpretation of the underlying complaint, the Hartford Policies, and its communications with Mr. Epstein and Ms. Crupper.

73.     Nath alleges on information and belief that in conducting its investigation of its duty to defend, Hartford did not have any communications with Hilborne or their counsel prior to sending the September 17, 2007 letter.

74.     Nath alleges on information and belief that in conducting its investigation of its duty to defend, Hartford did not review any of the advertisements at issue in the Underlying Lawsuit.

75.     Nath alleges on information and belief that prior to September 17, 2007, Hartford did not obtain any information from any sources, other than the underlying complaint, and the Hartford Policies, to confirm its conclusion that it had no duty to defend its insureds in the Underlying Lawsuit.

76.     Nath alleges on information and belief that prior to September 17, 2007, Hartford did not obtain any information from any sources other than the exchange of letters and telephone

1   conferences with Mr. Epstein and Ms. Crupper, the underlying complaint, and the Hartford

2   Policies, to confirm its conclusion that it had no duty to defend its insureds in the Underlying

3   Lawsuit.

4   77.   Nath alleges on information and belief that Hartford did not rely upon any

5   information or investigation other than its review of the underlying complaint to confirm its

6   conclusion stated in the September 17 letter that "there is not a single assertion of fact in the

7   complaint that Nath's advertisement copied plaintiffs."

8   78.   Nath alleges on information and belief that Hartford did not rely upon any

9   information or investigation other than its review of the underlying complaint to confirm its

10  conclusion that in the Underlying Lawsuit, there was "no claim that Nath advertised at all."

11  79.   Under the Policy, Hartford had a duty to defend the Nath Defendants, if the

12  allegations in the underlying complaint stated a potential claim against them seeking damages

13  because of "personal and advertising injury", as that term is defined in the Policy, allegedly

14  caused by an offense arising out of Nath's business and committed in the United States, even if

15  Nath never actually committed such offense.

16  80.   As a direct and legal result of Hartford's unreasonable denial of coverage and

17  failure to defend the Nath Defendants, Nath incurred and paid in excess of $100,000 in defense

18  fees and costs in the Underlying Lawsuit.

19  **CLAIMS FOR RELIEF**

20  **FIRST CAUSE OF ACTION**

21  **(Breach of Contract)**

22  81.   Nath incorporates by reference in this cause of action, as though set forth at length

23  herein, all of the allegations set forth in each of the preceding paragraphs in this Complaint.

24  82.   The Hartford Policies imposed a duty upon Hartford to defend Nath and its

25  members, Mr. Epstein and Mr. Nath, in the Underlying Lawsuit.

26  83.   In particular, the Policy imposed a duty upon Hartford to defend Nath and its

27  members, Mr. Epstein and Mr. Nath, in the Underlying Lawsuit.

28  84.   Nath has satisfied all of its obligations under the Hartford Policies.

1    85.    Nath has also satisfied all of its obligations under the Policy.

2    86.    Hartford breached its duty to defend Nath and its members by declining, after

3    repeated demand, to provide or pay for a defense in the Underlying Lawsuit.

4    87.    As a direct, proximate and legal result of Hartford's breach of its contractual duty

5    to defend, Nath has suffered damages, including all attorney fees paid by Nath and its members

6    in connection with the defense of the Underlying Lawsuit, in an amount according to proof.

7    **SECOND CAUSE OF ACTION**

8    **(Breach of Implied Covenant of Good Faith and Fair Dealing)**

9    88.    Nath incorporates by reference in this cause of action, as though set forth at length

10    herein, all of the allegations set forth in each of the preceding paragraphs in this Complaint.

11    89.    Each of the Hartford Policies, including the Policy, contain by nature of the

12    agreement and by operation of law, an implied covenant of good faith and fair dealing, that no

13    party to the agreement will take any action which would deprive or jeopardize the right or

14    benefits of the other party under the agreement.

15    90.    In response to Nath's tender of defense, Hartford had a duty to promptly and

16    reasonably:  (1) conduct a fair and impartial investigation to determine coverage; (2) review and

17    consider all potential bases for coverage under the Hartford Policies; (3) disclose to Nath and all

18    other insureds named as defendants in the Underlying Lawsuit all benefits or coverages that

19    might apply to the Underlying Lawsuit; (4) provide Nath and its members with an immediate and

20    complete defense in the Underlying Lawsuit; (5) timely pay or offer to pay all reasonable and

21    necessary defense costs; (6) timely communicate regarding coverage issues and settlement

22    opportunities; and (7) evaluate and participate meaningfully in efforts to settle the case.

23    91.    Hartford breached the duty of good faith and fair dealing by engaging in all of the

24    wrongful conduct described herein above, which included its failure to promptly and reasonably

25    perform each of the duties described in the foregoing paragraph.

26    92.    Nath further alleges on information and belief that Hartford breached the implied

27    covenant of good faith and fair dealing by acting to protect its own interests, to the detriment of

28    and instead of the interests of its insureds under the Hartford Policies.

93.     Nath alleges on information and belief that Hartford unreasonably failed and refused to meet its contractual obligation to defend the Nath Defendants in the Underlying Lawsuit by ignoring specific allegations in the underlying complaint favorable to coverage and, instead, intentionally interpreting the allegations in a way to avoid coverage.

94.     As a direct, legal and proximate result of Hartford's breach of the implied covenant of good faith and fair dealing, Nath has suffered general, special, consequential, and incidental damages according to proof.

95.     As a further legal result of Hartford's wrongful conduct, Nath was required to retain counsel to pursue recovery of benefits under the Hartford Policies that were unreasonably withheld and to file this action in order to procure said wrongfully withheld policy benefits, resulting in further damages in the form of attorneys fees and costs recoverable pursuant to the California Supreme Court decision in *Brandt v. Superior Court,* 37 Cal.3d 813 (1985), in a sum according to proof at trial.

96.     Nath further alleges on information and belief that in committing the wrongful acts described herein above, Hartford acted with malice, oppression and fraud, and with a conscious disregard for its insureds' rights.

97.     Nath further alleges on information and belief that each of the wrongful acts of Hartford and or its agents described herein above, was either performed, authorized or ratified by an officer, director or managing agent of Hartford and that Nath is, therefore, entitled to punitive damages in an amount sufficient to punish and make an example of Hartford.

**WHEREFORE,** Plaintiff Nath prays for judgment against Defendant Hartford as follows:

## PRAYER

## FOR THE FIRST CAUSE OF ACTION

1.      For general, special, consequential and incidental damages in a sum according to proof at trial;

2.      For prejudgment interest at the legal rate;

3.      For the costs of suit herein; and

1      4.     For such other and further relief as the Court deems just, equitable and proper.

2                          **FOR THE SECOND CAUSE OF ACTION**

3      5.     For general, special, consequential and incidental damages in a sum according to

4   proof at trial;

5      6.     For prejudgment interest at the legal rate;

6      7.     For reasonable attorneys fees, as damages pursuant to *Brandt v. Superior Court,*

7   *supra,* according to proof at trial;

8      8.     For punitive damages;

9      9.     For the costs of suit herein; and

10     10.    For such other and further relief as the Court deems just, equitable, and proper.

11

12   DATED:  August 25, 2008                    **HILDING LAW FIRM**

13

14                                       By: _____

15                                          Paul A. Hilding, Esq.
                                            Peter Schluederberg, Esq.
16                                          Attorneys for Plaintiff
                                            NATH & ASSOCIATES, PLLC
17

18                          **DEMAND FOR JURY TRIAL**

19          Plaintiff Nath & Associates, PLLC hereby demands a jury trial.

20

21   DATED:  August 25, 2008                    **HILDING LAW FIRM**

22

23                                       By: _____

24                                          Paul A. Hilding, Esq.
                                            Peter Schluederberg, Esq.
25                                          Attorneys for Plaintiff
                                            NATH & ASSOCIATES, PLLC
26

27

28

## Table of Exhibits

| Exhibit Number | Page Number | Description |
|---|---|---|
| Exhibit 1 | 0001 | Business liability coverage forms, endorsements and declarations from policy number 30 SBA RM7202 SA, effective 10/1/06 – 10/1/07 |
| Exhibit 2 | 0049 | Complaint in Case No. 37-2007-00054248-CU-BT-NC, Superior Court of the State of California, County of San Diego, North County Judicial District |
| Exhibit 3 | 0081 | 8/22/07 letter from Warren Freiman of The Hartford to Ross Epstetin, Esq. and Elizabeth Crupper, Esq. of The Nath Law Group |
| Exhibit 4 | 0084 | 8/24/07 letter from Ross Epstein, Esq. of the Nath Law Group to Warren Freiman of The Hartford |
| Exhibit 5 | 0086 | 9/17/07 letter from Warren Freiman of The Hartford to Ross Epstein, Esq. of The Nath Law Group |

**EXHIBIT 1**

02
72
RM
SBA

This **Spectrum Policy**  sists of the Declarations, Coverage Form  ommon Policy Conditions and any other Forms and Endor  .ents issued to be a part of the Policy. This insurance is provided by the insurance company of The Hartford Insurance Group shown below.

**THE HARTFORD**

**INSURER:** HARTFORD CASUALTY INSURANCE COMPANY
HARTFORD PLAZA, HARTFORD, CT 06115
COMPANY CODE: 3

**Policy Number:** 30 SBA RM7202  SA

## SPECTRUM POLICY DECLARATIONS          COPY

**Named Insured and Mailing Address:**       NATH & ASSOCIATES, PLLC
(No., Street, Town, State, Zip Code)

112 SOUTH WEST STREET
ALEXANDRIA          VA  22314

**Policy Period:**          From     10/01/06     **To**     10/01/07     1     YEAR
12:01 a.m., Standard time at your mailing address shown above. **Exception:** 12 noon in New Hampshire.

**Name of Agent/Broker:** R C M & D, INC
**Code:** 727000

**Previous Policy Number:** 30 SBA RM7202

**Named Insured Is:** PLLC

**Audit Period:** NON-AUDITABLE

**Type of Property Coverage:** SPECIAL

**Insurance Provided:** In return for the payment of the premium and subject to all of the terms of this policy, we agree with you to provide insurance as stated in this policy.

**TOTAL ANNUAL PREMIUM IS:**          $5,081
IN RECOGNITION OF THE MULTIPLE COVERAGES INSURED WITH THE HARTFORD, YOUR POLICY PREMIUM INCLUDES AN ACCOUNT CREDIT.

01714

*110023ORM72020107

Countersigned by

_____
Authorized Representative          Date

# SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 30 SBA RM7202

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location: 001    Building: 001**

11455 EL CAMINO ROAD #210
SAN DIEGO      CA  92130

**Description of Business:**
LAWYERS & LAW FIRMS

**Deductible: $  250 PER OCCURRENCE**

**BUILDING AND BUSINESS PERSONAL PROPERTY  LIMITS OF INSURANCE**

   **BUILDING**

                                                    NO  COVERAGE

   **BUSINESS PERSONAL PROPERTY**

      REPLACEMENT COST                    $     11,800

   **PERSONAL PROPERTY OF OTHERS**

      REPLACEMENT COST                    NO  COVERAGE

   **MONEY AND SECURITIES**

      **INSIDE THE PREMISES**            $    10,000
      **OUTSIDE THE PREMISES**           $     5,000

---

Form SS 00 02 11 93 T  Printed in U.S.A. (NS)          Page 002  (CONTINUED ON NEXT PAGE)
Process Date: 07/26/06                                 Policy Expiration Date: 10/01/07

Exhibit 1
0002

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 30 SBA RM7202

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 001      **Building:** 001

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO THIS LOCATION | LIMITS OF INSURANCE |
|---|---|
| STRETCH PLUS FOR LAW OFFICES FORM SS 04 94 THIS FORM INCLUDES MANY ADDITIONAL COVERAGES AND EXTENSIONS OF COVERAGES. A SUMMARY OF THE COVERAGE LIMITS IS ATTACHED. | |
| LIMITED FUNGI, BACTERIA OR VIRUS COVERAGE: FORM SS 40 93 THIS IS THE MAXIMUM AMOUNT OF INSURANCE FOR THIS COVERAGE, SUBJECT TO ALL PROPERTY LIMITS FOUND ELSEWHERE ON THIS DECLARATION. INCLUDING BUSINESS INCOME AND EXTRA EXPENSE COVERAGE FOR: | $   50,000

30 DAYS |

Exhibit 1
003

# SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 30 SBA RM7202

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

Location: 002    Building: 001

112 SOUTH WEST STREET
ALEXANDRIA    VA 22304

**Description of Business:**
LAWYERS & LAW FIRMS


Deductible: $ 250 PER OCCURRENCE


BUILDING AND BUSINESS PERSONAL PROPERTY  LIMITS OF INSURANCE

  BUILDING

                                        NO COVERAGE


BUSINESS PERSONAL PROPERTY

  REPLACEMENT COST                          $ 1,316,900

PERSONAL PROPERTY OF OTHERS

  REPLACEMENT COST                          NO COVERAGE


MONEY AND SECURITIES

  INSIDE THE PREMISES                 $   10,000
  OUTSIDE THE PREMISES                $    5,000


Form SS 00 02 11 93 T Printed in U.S.A. (NS)
Process Date: 07/26/06

Page 004 (CONTINUED ON NEXT PAGE)
Policy Expiration Date: 10/01/07

Exhibit 1
0004

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 30 SBA RM7202

Location(s), Building(s), Business of Named Insured and Schedule of Coverages for Premises as designated by Number below.

**Location:** 002       **Building:** 001

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO THIS LOCATION | LIMITS OF INSURANCE |
|---|---|

STRETCH PLUS FOR LAW OFFICES
FORM SS 04 94
THIS FORM INCLUDES MANY ADDITIONAL
COVERAGES AND EXTENSIONS OF
COVERAGES. A SUMMARY OF THE
COVERAGE LIMITS IS ATTACHED.

LIMITED FUNGI, BACTERIA OR VIRUS        $    50,000
COVERAGE:
FORM SS 40 93
THIS IS THE MAXIMUM AMOUNT OF
INSURANCE FOR THIS COVERAGE,
SUBJECT TO ALL PROPERTY LIMITS
FOUND ELSEWHERE ON THIS
DECLARATION.
INCLUDING BUSINESS INCOME AND EXTRA
EXPENSE COVERAGE FOR:                   30 DAYS

*1100230RM72020107*     01716

## SPECTRUM POLICY DECLARATIONS (Continued)
**POLICY NUMBER:** 30 SBA RM7202

| PROPERTY OPTIONAL COVERAGES APPLICABLE TO ALL LOCATIONS | LIMITS OF INSURANCE |
|---|---|
| ACCOUNTS RECEIVABLE FORM SS 04 39 | $ 500,000 |
| BUSINESS INCOME AND EXTRA EXPENSE COVERAGE COVERAGE INCLUDES THE FOLLOWING COVERAGE EXTENSIONS: | 12 MONTHS ACTUAL LOSS SUSTAINED |
| ACTION OF CIVIL AUTHORITY: EXTENDED BUSINESS INCOME: | 30 DAYS 30 CONSECUTIVE DAYS |
| VALUABLE PAPERS AND RECORDS FORM SS 04 47 | $ 500,000 |
| EMPLOYEE DISHONESTY: FORM SS 04 42 DEDUCTIBLE: $ 100 EACH OCCURRENCE | $ 75,000 |
| EQUIPMENT BREAKDOWN COVERAGE COVERAGE FOR DIRECT PHYSICAL LOSS DUE TO: MECHANICAL BREAKDOWN, ARTIFICIALLY GENERATED CURRENT AND STEAM EXPLOSION | |
| THIS ADDITIONAL COVERAGE INCLUDES THE FOLLOWING EXTENSIONS HAZARDOUS SUBSTANCES EXPEDITING EXPENSES | $ 50,000 $ 50,000 |
| MECHANICAL BREAKDOWN COVERAGE ONLY APPLIES WHEN BUILDING OR BUSINESS PERSONAL PROPERTY IS SELECTED ON THE POLICY | |

**Form SS 00 02 11 93 T** Printed in U.S.A. (NS)
**Process Date:** 07/26/06

**Page** 006   (CONTINUED ON NEXT PAGE)
**Policy Expiration Date:** 10/01/07

Exhibit 1
0006



# COMMON POLICY CONDITIONS

All coverages of this policy are subject to the following conditions.

## A. CANCELLATION

1. The first Named Insured shown in the Declarations may cancel this policy by mailing or delivering to us advance written notice of cancellation.

2. We may cancel this policy by mailing or delivering to the first Named Insured written notice of cancellation at least:

   a. 5 days before the effective date of cancellation if any one of the following conditions exists at any building that is Covered Property in this policy:

      (1) The building has been vacant or unoccupied 60 or more consecutive days. This does not apply to:

         (a) Seasonal unoccupancy; or

         (b) Buildings in the course of construction, renovation or addition.

      Buildings with 65% or more of the rental units or floor area vacant or unoccupied are considered unoccupied under this provision.

      (2) After damage by a Covered Cause of Loss, permanent repairs to the building:

         (a) Have not started; and

         (b) Have not been contracted for, within 30 days of initial payment of loss.

      (3) The building has:

         (a) An outstanding order to vacate;

         (b) An outstanding demolition order; or

         (c) Been declared unsafe by governmental authority.

      (4) Fixed and salvageable items have been or are being removed from the building and are not being replaced. This does not apply to such removal that is necessary or incidental to any renovation or remodeling.

      (5) Failure to:

         (a) Furnish necessary heat, water, sewer service or electricity for 30 consecutive days or more, except during a period of seasonal unoccupancy; or

         (b) Pay property taxes that are owing and have been outstanding for more than one year following the date due, except that this provision will not apply where you are in a bona fide dispute with the taxing authority regarding payment of such taxes.

   b. 10 days before the effective date of cancellation if we cancel for nonpayment of premium.

   c. 30 days before the effective date of cancellation if we cancel for any other reason.

3. We will mail or deliver our notice to the first Named Insured's last mailing address known to us.

4. Notice of cancellation will state the effective date of cancellation. The policy period will end on that date.

5. If this policy is canceled, we will send the first Named Insured any premium refund due. Such refund will be pro rata. The cancellation will be effective even if we have not made or offered a refund.

6. If notice is mailed, proof of mailing will be sufficient proof of notice.

7. If the first Named Insured cancels this policy, we will retain no less than $100 of the premium.

## B. CHANGES

This policy contains all the agreements between you and us concerning the insurance afforded. The first Named Insured shown in the Declarations is authorized on behalf of all insureds to agree with us on changes in the terms of this policy. If the terms

Copyright, Hartford Fire Insurance Company, 1996

COMMON POLICY CONDITIONS

are changed, the changes will be shown in an endorsement issued by us and made a part of this policy.

## C. CONCEALMENT, MISREPRESENTATION OR FRAUD

This policy is void in any case of fraud by you at any time as it relates to this policy. It is also void if you or any other insured, at any time, intentionally conceal or misrepresent a material fact concerning:

1. This policy;

2. The Covered Property;

3. Your interest in the Covered Property; or

4. A claim under this policy.

## D. EXAMINATION OF YOUR BOOKS AND RECORDS

We may examine and audit your books and records as they relate to the policy at any time during the policy period and up to three years afterward.

## E. INSPECTIONS AND SURVEYS

We have the right but are not obligated to:

1. Make inspections and surveys at any time;

2. Give you reports on the conditions we find; and

3. Recommend changes.

Any inspections, surveys, reports or recommendations relate only to insurability and the premiums to be charged. Such inspections are not safety inspections. We do not undertake any duty to provide for the health or safety of any person. And we do not represent or warrant that conditions:

1. Are safe or healthful; or

2. Comply with laws, regulations, codes or standards.

This condition applies not only to us, but also to any rating, advisory, rate service or similar organization which makes insurance inspections, surveys, reports or recommendations on our behalf.

## F. INSURANCE UNDER TWO OR MORE COVERAGES

If two or more of this policy's coverages apply to the same loss or damage, we will not pay more than the actual amount of the loss or damage.

## G. LIBERALIZATION

If we adopt any revision that would broaden the coverage under this policy without additional premium within 45 days prior to or during the policy period, the broadened coverage will immediately apply to this policy.

## H. OTHER INSURANCE - PROPERTY COVERAGE

1. If there is other insurance covering the same loss or damage, we will pay only for the amount of covered loss or damage in excess of the amount due from that other insurance, whether you can collect on it or not. But we will not pay more than the applicable Limit of Insurance.

## I. OTHER INSURANCE - BUSINESS LIABILITY

If other valid and collectible insurance is available to the insured for a loss we cover under Business Liability Coverage Form, our obligations are limited as follows:

a. Primary Insurance

This insurance is primary except when b. below applies. If this insurance is primary, our obligations are not affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in c. below.

b. Excess Insurance

This insurance is excess over any of the other insurance, whether primary, excess, contingent or on any other basis:

(1) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(2) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner; or

(3) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of the Business Liability Coverage Form.

When this insurance is excess, we will have no duty to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

Copyright, Hartford Fire Insurance Company, 1996

Form SS 00 05 06 96 Printed in U.S.A. (NS)

Exhibit 1
0008

COMMON POLICY CONDITIONS

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not brought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. Method of Sharing

If all of the other insurance permits contribution by equal shares, we will follow this method also. Under this approach each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

## J. PREMIUMS

1. The first Named Insured shown in the Declarations:

   a. Is responsible for the payment of all premiums; and

   b. Will be the payee for any return premiums we pay.

2. The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

3. With our consent, you may continue this policy in force by paying a continuation premium for each successive one-year period. The premium must be:

   a. Paid to us prior to the anniversary date; and

   b. Determined in accordance with paragraph 2. above.

   Our forms then in effect will apply. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with our rates and rules then in effect.

## K. TRANSFER OF RIGHTS OF RECOVERY AGAINST OTHERS TO US

1. Applicable to Property Coverage:

   If any person or organization to or for whom we make payment under this policy has rights to recover damages from another, those rights are transferred to us to the extent of our payment. That person or organization must do everything necessary to secure our rights and must do nothing after loss to impair them. But you may waive your rights against another party in writing:

   a. Prior to a loss to your Covered Property.

   b. After a loss to your Covered Property only if, at time of loss, that party is one of the following:

      (1) Someone insured by this insurance;

      (2) A business firm:

         (a) Owned or controlled by you; or

         (b) That owns or controls you; or

      (3) Your tenant.

   You may also accept the usual bills of lading or shipping receipts limiting the liability of carriers. This will not restrict your insurance.

2. Applicable to Business Liability Coverage:

   If the insured has rights to recover all or part of any payment we have made under this policy, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them. This condition does not apply to Medical Expenses Coverage.

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Page 3 of 4

Copyright, Hartford Fire Insurance Company, 1996

Exhibit 1
0009

COMMON POLICY CONDITIONS

## L. TRANSFER OF YOUR RIGHTS AND DUTIES UNDER THIS POLICY

Your rights and duties under this policy may not be transferred without our written consent except in the case of death of an individual Named Insured.

If you die, your rights and duties will be transferred to your legal representative but only while acting within the scope of duties as your legal representative. Until your legal representative is appointed, anyone having proper temporary custody of your property will have your rights and duties but only with respect to that property.

## M. SUSPENSION IN COVERAGE

This provision is applicable only to the Equipment Breakdown Additional Coverage in the Special Property Coverage Form.

**Suspension**

When any equipment covered by the Equipment Breakdown Additional Coverage is found to be in, or exposed to a dangerous condition, any of our representatives may immediately suspend the insurance provided by the Equipment Breakdown Additional Coverage against loss or damage to that equipment.

We can do this by mailing or delivering a written notice of suspension to your address as shown in the Declarations, or at the address where the equipment is located. Once suspended in this way, your insurance can be reinstated only by written notice from us. If we suspend your insurance, you will get a pro rata refund of premium. But the suspension will be effective even if we have not yet made or offered a refund.

Our President and Secretary have signed this policy. The Declarations page has also been countersigned by our duly authorized agent.

Brian S. Becker, Secretary

David Zwiener, President

Form SS 00 05 06 96  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1996

Exhibit 1
0010



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALIFORNIA CHANGES -
# CANCELLATION AND NONRENEWAL

This endorsement modifies insurance provided under the following:

**COMMON POLICY CONDITIONS**

This endorsement does not apply to coverage provided for employee dishonesty, forgery or alteration or public employee dishonesty.

A. Paragraphs **2.** and **3.** of the **Cancellation** Common Policy Condition are replaced by the following:

**2. All Policies In Effect for 60 Days Or Less:**
If this policy has been in effect for 60 days or less, and is not a renewal of a policy we have previously issued, we may cancel this policy by mailing or delivering to the first Named Insured at the mailing address shown in the policy and to the producer of record, advance written notice of cancellation, stating the reason for cancellation, at least:

a. 10 days before the effective date of cancellation if we cancel for:

(1) Nonpayment of premium; or

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

b. 30 days before the effective date of cancellation if we cancel for any other reason.

**3. All Policies In Effect For More Than 60 Days**

a. If this policy has been in effect for more than 60 days, or is a renewal of a policy we issued, we may cancel this policy only upon the occurrence, after the effective date of the policy, of one or more of the following:

(1) Nonpayment of premium, including payment due on a prior policy we issued and due during the current policy term covering the same risks.

(2) Discovery of fraud or material misrepresentation by:

(a) Any insured or his or her representative in obtaining this insurance; or

(b) You or your representative in pursuing a claim under this policy.

(3) A judgment by a court or an administrative tribunal that you have violated a California or Federal law, having as one of its necessary elements an act which materially increases any of the risks insured against.

(4) Discovery of willful or grossly negligent acts or omissions, or of any violations of state laws or regulations establishing safety standards, by you or your representative, which materially increase any of the risks insured against.

(5) Failure by you or your representative to implement reasonable loss control requirements, agreed to by you as a condition of policy issuance, or which were conditions precedent to our use of a particular rate or rating plan, if that failure materially increases any of the risks insured against.

(6) A determination by the Commissioner of Insurance that the:

(a) Loss of, or changes in, our reinsurance covering all or part of the risk would threaten our financial integrity or solvency; or

Form SS 01 21 08 97  Printed in U.S.A.  (NS)                    **Page 1 of 3**

Copyright, Hartford Fire Insurance Company, 1997

Exhibit 1
0011

(b) Continuation of the policy coverage would:

    i. Place us in violation of California law or the laws of the state where we are domiciled; or

    ii. Threaten our solvency.

(7) A change by you or your representative in the activities or property of the commercial or industrial enterprise, which results in a materially added, increased or changed risk, unless the added, increased or changed risk is included in the policy.

  **b.** We will mail or deliver advance written notice of cancellation, stating the reason for cancellation, to the first Named Insured, at the mailing address shown in the policy, and to the producer of record, at least:

    (1) 10 days before the effective date of cancellation if we cancel for a reason listed in paragraph 3.a.(1) or 3.a.(2).; or

    (2) 30 days before the effective date of cancellation if we cancel for any other reason listed in paragraph 3.a.

**B.** The following provisions is added to the Cancellation Common Policy Condition:

  **7. Residential Property**

This provision applies to coverage on real property which is used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household personal property in a residential unit, if such coverage is written under this policy:

  **a.** If such coverage has been in effect for 60 days or less, and is not a renewal of coverage we previously issued, we may cancel this coverage for any reason, except as provided in **b.** and **c.** below.

  **b.** We may not cancel solely because the first Named Insured has:

    (1) Accepted an offer of earthquake coverage; or

    (2) Cancelled or did not renew a policy issued by the California Earthquake Authority (CEA) that included and earthquake policy premium surcharge.

However, we shall cancel this policy if the first Named Insured has accepted a new or renewal policy issued by the CEA that includes an earthquake policy premium surcharge but fails to pay the earthquake policy premium surcharge authorized by the CEA.

  **c.** We may not cancel such coverage solely because corrosive soil conditions exist on the premises. This restriction (**c.**) applies only if coverage under the Special Property Coverage Form, which excludes loss or damage caused by or resulting from corrosive soil conditions.

**C.** The following is added and supersedes any provisions to the contrary:

**NONRENEWAL**

  **1.** Subject to the provisions of paragraphs **C.2.** and **C.3.** below, if we elect not to renew this policy, we will mail or deliver written notice stating the reason for nonrenewal to the first Named Insured shown in the Declarations and to the producer of record, at least 60 days but not more than 120 days, before the expiration or anniversary date.

We will mail or deliver our notice to the first Named Insured, and to the producer of record, at the mailing address shown in the policy.

  **2. RESIDENTIAL PROPERTY**

This provision applies to coverage on real property used predominantly for residential purposes and consisting of not more than four dwelling units, and to coverage on tenants' household property contained in a residential unit, if such coverage is written under this policy.

  **a.** We may elect not to renew such coverage for any reason, except as provided in **b.**, **c.** and **d.** below:

  **b.** We will not refuse to renew such coverage solely because the first Named Insured has accepted an offer of earthquake coverage.

However, the following applies only to insurers who are associated participating insurers as established by Cal. Ins. Code Section 10089.16. We may elect not to renew such coverage after the first Named Insured has accepted an offer of earthquake coverage, if one or more of the following reasons applies:

Form SS 01 21 08 97  Printed in U.S.A. (NS)

Copyright, Hartford Fire Insurance Company, 1997

Exhibit 1
0012

(1) The nonrenewal is based on sound underwriting principles that relate tot he coverages provided by this policy and that are consistent with the approved rating plan and related documents filed with the Department of Insurance as required by existing law;

(2) The Commissioner of Insurance finds that the exposure to potential losses will threaten our solvency or place us in a hazardous condition. A hazardous condition in which we make claims payments for losses resulting from an earthquake that occurred within the preceding two years and that required a reduction in policyholder surplus of at least 25% for payment of those claims; or

(3) We have:

(a) Lost or experienced a substantial reduction in the availability or scope of reinsurance coverage; or

(b) Experienced a substantial increase in the premium charged for reinsurance coverage of our residential property insurance policies; and

the Commissioner has approved a plan for the nonrenewals that is fair and equitable, and that is responsive to the changes in our reinsurance position.

c. We will not refuse to renew such coverage solely because the first Named Insured has cancelled or did not renew a policy, issued by the California Earthquake Authority that included an earthquake policy premium surcharge.

d. We will not refuse to renew such coverage solely because corrosive soil conditions exist on the premises. This restriction (c) applies only if coverage is subject to the Special Property Coverage Form, which excludes loss or damage caused by or resulting from corrosive soil conditions.

3. We are not required to send notice of nonrenewal in the following situations:

a. If the transfer or renewal of a policy, without any changes in terms, conditions, or rates, is between us and a member of our insurance group.

b. If the policy has been extended for 90 days or less, provided that notice has been given in accordance with paragraph **C.1.**

c. If you have obtained replacement coverage, or if the first Named Insured has agreed, in writing, within 60 days of the termination of the policy, to obtain that coverage.

d. If the policy is for a period of no more than 60 days and you are notified at the time of issuance that it will not be renewed.

e. If the first Named Insured requests a change in the terms or conditions or risks covered by the policy within 60 days of the end of the policy period.

f. If we have made a written offer to the first Named Insured, in accordance with the time frames shown in paragraph **C.1.**, to renew the policy under changed terms or conditions or at an increased premium rate, when the increase exceeds 25%.

Copyright, Hartford Fire Insurance Company, 1997

Exhibit 1
0013



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES - POLICY PERIOD

This endorsement modifies insurance provided under the following:

**STANDARD PROPERTY COVERAGE FORM, OR
SPECIAL PROPERTY COVERAGE FORM, AND
BUSINESS LIABILITY COVERAGE FORM, AND
COMMON POLICY CONDITIONS**

Coverage under this policy begins at 12:01 A.M. (Standard Time) at the mailing address shown in the Declarations. However, to the extent that this policy replaces coverage in other policies terminating at 12:01 A.M. (Standard Time) on the inception of this policy at the location of the property involved, coverage under this policy, at each location, becomes effective when such other coverage terminates.

Form SS 01 72 03 92   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992

Exhibit 1
0014



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# VIRGINIA CHANGES

This endorsement modifies insurance provided under the following forms when such forms are made a part of this policy:
COMMON POLICY CONDITIONS
BUSINESS LIABILITY COVERAGE FORM
PRINTING SERVICES ERRORS AND OMISSIONS FORM
HIRED AUTO AND NON-OWNED AUTO

A. The last subparagraph of item **3.** in Section **J.** **PREMIUMS** of the Common Policy Conditions is replaced by the following:

Our forms then in effect will be provided to you. If you do not pay the continuation premium, this policy will expire on the first anniversary date that we have not received the premium.

B. Paragraph **4.** of the **PREMIUMS** Common Policy Condition is replaced by the following:

4. Undeclared exposures or change in your business operation, acquisition or use of locations may occur during the policy period that are not shown in the Declarations. If so, we may require an additional premium. That premium will be determined in accordance with the rates and rules in effect on the inception date or last anniversary date of the policy.

C. Paragraphs **3.** and **13.** of the **LIABILITY AND MEDICAL EXPENSES DEFINITIONS** in the Business Liability Coverage Form are replaced by the following:

3. **"Auto"** means a land motor vehicle, trailer or semitrailer designed for travel on public roads (including any machinery or apparatus attached thereto), but does not include "mobile equipment;"

13. **"Mobile equipment"** means a land vehicle (including any machinery or apparatus attached thereto), whether or not self-propelled, (1) not subject to motor vehicle registration, or (2) maintained for use exclusively on premises owned by or rented to you, including the ways immediately adjoining, or (3) designed for use principally off public roads, or (4) designed or maintained for the sole purpose of affording mobility to equipment of the following types forming an integral part of or permanently attached to such vehicle: power cranes, shovels, loaders, diggers and drills; concrete mixers (other than the mix-in-transit-type); graders, scrapers, rollers and

other road construction or repair equipment; air-compressors, pumps and generators, including spraying, welding and building cleaning equipment; and geophysical exploration and well servicing equipment.

D. Provision **C.2.h. Broad Form Named Insured** of the Business Liability Coverage Form and paragraph 3 of **Section II – Who Is An Insured** provision in the Printing Services Errors and Omissions form are amended to read as follows:

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

Any organization you newly acquire or form other than a partnership, joint venture or limited liability company, and over which you maintain ownership or majority interest, will qualify as an insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 90th day after you acquire or form the organization or the end of the policy period, whichever is earlier.

(2) **Coverage under this provision does not apply to:**

a. "bodily injury" or "property damage" that occurred before you acquired or formed the organization; and

b. "personal and advertising injury" arising out of an offense committed before you acquired or formed the organization.

E. Paragraph (5) of Exclusion **g.** of the Business Liability Coverage Form SS 00 08 and of the Exclusion – Employees And Volunteer Workers As Insureds form SS 05 57, if made a part of this policy, is replaced by the following:

**(5)** Liability assumed under any "insured contract" for the ownership, maintenance or use of aircraft, watercraft or "autos".

**F.** Paragraph **(6)** of Exclusion **g.** of the Business Liability Coverage Form SS 00 08 and of the Exclusion – Employees And Volunteer Workers As Insureds form SS 05 57, if made a part of this policy, is deleted.

**G.** Paragraph **C.c.(2)** of the Hired Auto And Non-Owned Auto form SS 04 38 is amended to read as follows:

**(2)** The "bodily injury" and "property damage" does not arise out of the operation of any equipment listed in paragraph **C.13.(2)** of the definition of "mobile equipment" in this endorsement.

© 2002, The Hartford



**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EFFECTIVE TIME CHANGES - REPLACEMENT OF 12 NOON

This endorsement modifies insurance provided under the policy to which it is attached.

To the extent that coverage in this policy replaces coverage in other policies terminating noon standard time on the inception date of this policy, coverage under this policy shall not become effective until such other coverage has terminated.

Form SS 12 03 03 92   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992

Exhibit 1
0017



# VIRGINIA NOTICE - ORDINANCE OR LAW

## IMPORTANT INFORMATION FOR VIRGINIA POLICYHOLDERS

Valuable coverages are available to you as an addition to your Spectrum Policy.  For an additional premium, you may purchase either the standard Ordinance or Law Coverage, or the Broad Form Ordinance or Law Coverage.

The standard Ordinance or Law Coverage provides that in the event of loss, property will be repaired or replaced in accordance with applicable ordinances or laws that regulate construction, repair or demolition.  The Broad Form Ordinance or Law Coverage also includes coverage for the cleanup, removal or treatment of pollutants, as a result of the enforcement of any ordinance or law.

If you would like to purchase this coverage, please contact your Hartford Agent or representative.

**PLEASE MAKE SURE TO INCLUDE YOUR POLICY NUMBER IN ANY CORRESPONDENCE.**

Form SS 83 44 02 00

Exhibit 1
0018

# BUSINESS LIABILITY COVERAGE FORM

© 2001, The Hartford

Exhibit 1
0019

## SPECTRUM POLICY DECLARATIONS (Continued)
POLICY NUMBER: 30 SBA RM7202

| BUSINESS LIABILITY | LIMITS OF INSURANCE |
|---|---|
| LIABILITY AND MEDICAL EXPENSES | $1,000,000 |
| MEDICAL EXPENSES - ANY ONE PERSON | $    10,000 |
| PERSONAL AND ADVERTISING INJURY | $1,000,000 |
| DAMAGES TO PREMISES RENTED TO YOU ANY ONE PREMISES | $   300,000 |
| AGGREGATE LIMITS | |
| PRODUCTS-COMPLETED OPERATIONS | $2,000,000 |
| GENERAL AGGREGATE | $2,000,000 |

BUSINESS LIABILITY OPTIONAL
COVERAGES

| | |
|---|---|
| HIRED/NON-OWNED AUTO LIABILITY FORM:  SS 04 38 | $1,000,000 |

UMBRELLA LIABILITY - SEE
SCHEDULE ATTACHED

EMPLOYEE BENEFITS LIABILITY
COVERAGE: FORM SS 04 13
  CLAIMS-MADE
  RETROACTIVE DATE: 10/01/2004

| | |
|---|---|
|   EACH CLAIM | $1,000,000 |
|   AGGREGATE | $2,000,000 |

01717

*1100230RM72020107

**SPECTRUM POLICY DECLARATIONS (Continued)**
POLICY NUMBER: 30 SBA RM7202

**Form Numbers of Forms and Endorsements that apply:**

| | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| SS | 00 | 01 | 04 | 93 | SS | 00 | 05 | 06 | 96 | SS | 00 | 07 | 10 | 02 | SS 00 08 04 01 |
| SS | 84 | 20 | 03 | 00 | SS | 01 | 21 | 08 | 97 | SS | 01 | 72 | 03 | 92 | SS 10 17 03 02 |
| SS | 04 | 13 | 03 | 92 | SS | 04 | 19 | 06 | 96 | SS | 04 | 30 | 03 | 00 | SS 04 38 06 01 |
| SS | 04 | 39 | 10 | 02 | SS | 04 | 41 | 04 | 01 | SS | 04 | 42 | 03 | 00 | SS 04 44 09 93 |
| SS | 04 | 45 | 10 | 96 | SS | 04 | 46 | 10 | 02 | SS | 04 | 47 | 10 | 02 | SS 04 78 04 01 |
| SS | 04 | 80 | 03 | 00 | SS | 04 | 86 | 03 | 00 | SS | 04 | 94 | 09 | 01 | SS 40 18 03 00 |
| SS | 40 | 93 | 10 | 02 | IH | 10 | 01 | 09 | 86 | SS | 05 | 12 | 03 | 92 | SS 05 13 04 01 |
| SS | 05 | 40 | 03 | 00 | SS | 05 | 47 | 09 | 01 | SS | 06 | 48 | 01 | 94 | SS 60 24 09 97 |
| SS | 10 | 16 | 03 | 02 | SS | 12 | 03 | 03 | 92 | SS | 50 | 19 | 06 | 03 | SS 50 30 06 03 |
| SX | 80 | 01 | 06 | 97 | SS | 83 | 76 | 02 | 06 | | | | | | |

---

**Process Date:** 07/26/06          **Policy Expiration Date:** 10/01/07
Exhibit 1
0021

# QUICK REFERENCE
## BUSINESS LIABILITY COVERAGE FORM
### READ YOUR POLICY CAREFULLY

| BUSINESS LIABILITY COVERAGE FORM | Beginning on Page |
|---|---|
| **A.  COVERAGES** | **1** |
| Business Liability | 1 |
| Medical Expenses | 1 |
| Professional Services Coverages | 2 |
| Incidental Malpractice Coverage | 2 |
| Coverage Extension - Supplementary Payments | 3 |
| **B.  EXCLUSIONS** | **4** |
| **C.  WHO IS AN INSURED** | **9** |
| **D.  LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE** | **12** |
| **E.  LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS** | **13** |
| 1.  Bankruptcy | 13 |
| 2.  Duties in The Event of Occurrence, Claim or Suit | 13 |
| 3.  Financial Responsibility Laws | 14 |
| 4.  Legal Action Against Us | 14 |
| 5.  Separation of Insureds | 14 |
| 6.  Unintentional Failure To Disclose Hazards | 14 |
| 7.  Other Insurance – Primary Additional Insured | 14 |
| **F.  OPTIONAL COVERAGES** | **15** |
| Additional Insureds | 15 |
| **G.  LIABILITY AND MEDICAL EXPENSES DEFINITIONS** | **17** |

Exhibit 1
0022



# BUSINESS LIABILITY COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

Throughout this policy the words "you" and "your" refer to the Named Insured shown in the Declarations. The words "we", "us" and "our" refer to the stock insurance company member of THE HARTFORD providing this insurance.

The word "insured" means any person or organization qualifying as such under Section C. - Who Is An Insured.

Other words and phrases that appear in quotation marks have special meaning. Refer to Section G. - Liability And Medical Expenses Definitions.

In consideration of the payment of the premium when due, and:

a. In reliance upon the statements made in the Declarations; and

b. Subject to the Limits Of Insurance, Exclusions, Definitions, Conditions and all other terms of this policy, including those modified, replaced by or added by endorsements we issue forming a part of this policy,

we agree with you as follows:

## A. COVERAGES

1. **BUSINESS LIABILITY COVERAGE (BODILY INJURY, PROPERTY DAMAGE, PERSONAL AND ADVERTISING INJURY)**

   **Insuring Agreement**

   a. We will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

   We may, at our discretion, investigate any "occurrence" or offense and settle any claim or "suit" that may result. But:

   (1) The amount we will pay for damages is limited as described in Section D. - Liability And Medical Expenses Limits Of Insurance; and

   (2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments, settlements or medical expenses to which this insurance applies.

   No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Coverage Extension - Supplementary Payments.

   b. This insurance applies to:

   (1) "Bodily injury" and "property damage" only if:

   (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

   (b) The "bodily injury" or "property damage" occurs during the policy period.

   (2) "Personal and advertising injury" caused by an offense arising out of your business, but only if the offense is committed in the "coverage territory" during the policy period.

   c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury".

2. **MEDICAL EXPENSES**

   **Insuring Agreement**

   a. We will pay medical expenses as described below for "bodily injury" caused by an accident:

   (1) On premises you own or rent;

   (2) On ways next to premises you own or rent; or

BUSINESS LIABILITY COVERAGE FORM

    (3) Because of your operations; provided that:

       (a) The accident takes place in the "coverage territory" and during the policy period;

       (b) The expenses are incurred and reported to us within three years of the date of the accident; and

       (c) The injured person submits to examination, at our expense, by physicians of our choice as often as we reasonably require.

**b.** We will make these payments regardless of fault. These payments will not exceed the applicable limit of insurance. We will pay reasonable expenses for:

    (1) First aid administered at the time of an accident;

    (2) Necessary medical, surgical, x-ray and dental services, including prosthetic devices; and

    (3) Necessary ambulance, hospital, professional nursing and funeral services.

**3. PROFESSIONAL SERVICES COVERAGES**

When your operations include:

**a.** Optical or hearing aid establishments, Exclusion **j. (7)** in Section **B. - EXCLUSIONS** does not apply.

**b.** Retail druggist or drugstore, Exclusion **j. (10)** in Section **B. - EXCLUSIONS** does not apply.

**c.** Funeral director or funeral parlors, the following professional services coverage is added:

    (1) The Business Liability Coverage applies to damages arising out of professional services by you or your "employees" in the course of your mortician or funeral parlor business. Subject to the Limits of Insurance stated in Section D. of this form, we will pay on behalf of the insured those sums that the insured becomes legally obligated to pay as damages for "bodily injury" including mental anguish, and "property damage" because of any:

       (a) Professional malpractice, error or omission in the

          (i) Removal;

          (ii) Handling;

          (iii) Disposition;

          (iv) Cremation;

          (v) Burial;

          (vi) Embalming; or

          (vii) Disinterment, of any "deceased human body";

          (viii) Conduct of any memorial service even though no "deceased human body" actually be present; and

          (ix) Injury to, destruction of or interference with the right of burial of a "deceased human body".

       (b) Professional service by any insured as a member of a:

          (i) Formal accreditation board; or

          (ii) A similar professional board or committee.

    (2) This insurance also applies to damages for "property damage" caused by an "occurrence" to:

       (a) Urns;

       (b) Caskets, linings or fittings;

       (c) Casket cases;

       (d) Crypts or mausoleums; or

       (e) Other facilities belonging to others that are in the care, custody or control of the insured and used for the purpose of burying or caring for a "deceased human body".

    (3) Only Exclusions **d., e., f.** and **k.** in Section **B. - EXCLUSIONS** apply to this coverage.

    (4) **Additional Definition**

    "Deceased human body" includes any part of a human body severed therefrom and ashes of a deceased human body after legal cremation.

**4. INCIDENTAL MALPRACTICE COVERAGE**

**a.** The definition of "bodily injury" in Section **G. - LIABILITY AND MEDICAL EXPENSES DEFINITIONS** is amended to include injury arising out of the rendering or failure to render medical or paramedical services to persons by any physician, dentist, nurse, emergency medical technician or paramedic who is employed by you to provide such services.

b. Paragraph 2.a.(1)(d) in Section C. - WHO IS AN INSURED does not apply to nurses, emergency medical technicians or paramedics referred to in a. above.

c. Paragraph (1) of Exclusion e. in Section B. - EXCLUSIONS does not apply to injury to the emotions or reputation of a person arising out of such services.

This Incidental Malpractice Coverage does not apply if you are engaged in the business or occupation of providing any services referred to in a. above.

## COVERAGE EXTENSION - SUPPLEMENTARY PAYMENTS

1. We will pay, with respect to any claim or "suit" we investigate or settle, or any "suit" against an insured we defend:

    a. All expenses we incur.

    b. Up to $1,000 for the cost of bail bonds required because of accidents or traffic law violations arising out of the use of any vehicle to which Business Liability Coverage for "bodily injury" applies. We do not have to furnish these bonds.

    c. The cost of bonds to release attachments, but only for bond amounts within the applicable limit of insurance. We do not have to furnish these bonds.

    d. All reasonable expenses incurred by the insured at our request to assist us in the investigation of the claim or defense of the "suit", including actual loss of earnings up to $500 a day because of time off from work.

    e. All costs taxed against the insured in the "suit".

    f. Prejudgment interest awarded against the insured on that part of the judgment we pay. If we make an offer to pay the applicable limit of insurance, we will not pay any prejudgment interest based on that period of time after the offer.

    g. All interest on the full amount of any judgment that accrues after entry of the judgment and before we have paid, offered to pay, or deposited in court the part of the judgment that is within the applicable limit of insurance.

    Any amounts paid under a. through g. above will not reduce the Limits of Insurance.

2. If we defend an insured against a "suit" and an indemnitee of the insured is also named as a party to the "suit", we will defend that indemnitee if all of the following conditions are met:

## BUSINESS LIABILITY COVERAGE FORM

a. The "suit" against the indemnitee seeks damages for which the insured has assumed the liability of the indemnitee in a contract or agreement that is an "insured contract";

b. This insurance applies to such liability assumed by the insured;

c. The obligation to defend, or the cost of the defense of, that indemnitee, has also been assumed by the insured in the same "insured contract";

d. The allegations in the "suit" and the information we know about the "occurrence" are such that no conflict appears to exist between the interests of the insured and the interest of the indemnitee;

e. The indemnitee and the insured ask us to conduct and control the defense of that indemnitee against such "suit" and agree that we can assign the same counsel to defend the insured and the indemnitee; and

f. The indemnitee:

    (1) Agrees in writing to:

        (a) Cooperate with us in the investigation, settlement or defense of the "suit";

        (b) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the "suit";

        (c) Notify any other insurer whose coverage is available to the indemnitee; and

        (d) Cooperate with us with respect to coordinating other applicable insurance available to the indemnitee; and

    (2) Provides us with written authorization to:

        (a) Obtain records and other information related to the "suit"; and

        (b) Conduct and control the defense of the indemnitee in such "suit".

So long as the above conditions are met, attorneys fees incurred by us in the defense of that indemnitee, necessary litigation expenses incurred by us and necessary litigation expenses incurred by the indemnitee at our request will be paid as Supplementary Payments.

Form SS 00 08 04 01

Page 3 of 20

Exhibit 1
0025

BUSINESS LIABILITY COVERAGE FORM

Not withstanding the provisions of paragraph **1.b.(b)** of Section **B. – EXCLUSIONS**, such payments will not be deemed to be damages for "bodily injury" and "property damage" and will not reduce the Limits of Insurance.

Our obligation to defend an insured's indemnitee and to pay for attorneys fees and necessary litigation expenses as Supplementary Payments ends when:

a. We have used up the applicable limit of insurance in the payment of judgments or settlements; or

b. The conditions set forth above, or the terms of the agreement described in paragraph f. above, are no longer met.

## B. EXCLUSIONS

1. **Applicable to Business Liability Coverage**

   This insurance does not apply to:

   a. **Expected or Intended Injury**

      (1) "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

      (2) "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

   b. **Contractual Liability**

      (1) "Bodily injury" or "property damage"; or

      (2) "Personal and advertising injury"

      for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

      This exclusion does not apply to liability for damages because of:

      (a) "Bodily injury", "property damage" or "personal and advertising injury" that the insured would have in the absence of the contract or agreement; or

      (b) "Bodily injury" or "property damage" assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purpose of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for an indemnitee are deemed to be damages because of "bodily injury" or "property damage" provided:

      (i) Liability to such indemnitee for, or for the cost of, that indemnitee's defense has also been assumed in the same "insured contract", and

      (ii) Such attorney fees and litigation expenses are for defense of that indemnitee against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

   c. **Liquor Liability**

      "Bodily injury" or "property damage" for which any insured may be held liable by reason of:

      (1) Causing or contributing to the intoxication of any person;

      (2) The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

      (3) Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

      This exclusion applies only if you are in the business of manufacturing, distributing, selling, serving or furnishing alcoholic beverages.

   d. **Workers Compensation and Similar Laws**

      Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

   e. **Employer's Liability**

      "Bodily injury" to:

      (1) An "employee" of the insured arising out of and in the course of:

         (a) Employment by the insured; or

         (b) Performing duties related to the conduct of the insured's business, or

Form SS 00 08 04 01

Exhibit 1
0026

BUSINESS LIABILITY COVERAGE FORM

(2) The spouse, child, parent, brother or sister of that "employee" as a consequence of (1) above.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

f. Pollution

(1) "Bodily injury", "property damage" or "personal and advertising injury" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to any insured. However, this subparagraph does not apply to:

(i) "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

(ii) "Bodily injury" or "property damage" for which you may be held liable, if you are a contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or loaned to, any insured, other than that additional insured; or

(iii) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

(b) At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

(c) Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

(i) Any insured; or

(ii) Any person or organization for whom you may be legally responsible; or

(d) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractor or subcontractor. However, this subparagraph does not apply to:

(i) "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured, contractor or subcontractor;

BUSINESS LIABILITY COVERAGE FORM

(II) "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought into that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(III) "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e) At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants".

(2) Any loss, cost or expense arising out of any:

(a) Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b) Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

g. **Aircraft, Auto or Watercraft**

"Bodily injury" or "property damage" arising out of the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft owned or operated by or rented or loaned to any insured. Use includes operation and "loading or unloading".

This exclusion applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured, if the "occurrence" which caused the "bodily injury" or "property damage" involved the ownership, maintenance, use or entrustment to others of any aircraft, "auto" or watercraft that is owned or operated by or rented or loaned to any insured.

This exclusion does not apply to:

(1) An aircraft that is:

(a) Hired, chartered or loaned with a paid crew; but

(b) Not owned by any insured;

(2) A watercraft while ashore on premises you own or rent; or

(3) A watercraft you do not own that is:

(a) Less than 51 feet long; and

(b) Not being used to carry persons for a charge.

This provision (3) applies to any person who, with your expressed or implied consent either uses or is responsible for use of a watercraft.

Provisions under paragraphs (1) and (3) of this Exclusion g. do not apply if the insured has any other insurance for "bodily injury" or "property damage" liability that would also be covered under those provisions, whether the other insurance is primary, excess, contingent or on any other basis. In that case, provisions (1) and (3) above do not provide any insurance.

(4) Parking an "auto" on, or on the ways next to, premises you own or rent, provided the "auto" is not owned by or rented or loaned to you or the insured;

(5) Liability assumed under any "insured contract" for the ownership, maintenance, or use of aircraft or watercraft; or

(6) "Bodily injury" or "property damage" arising out of the operation of any of the equipment listed in Paragraphs f.(2) or f.(3) of the definition of "mobile equipment".

h. **Mobile Equipment**

Exhibit 1
0028

"Bodily injury" or "property damage" arising out of:

(1) The transportation of "mobile equipment" by an "auto" owned or operated by or rented or loaned to any insured; or

(2) The use of "mobile equipment" in, or while in practice or preparation for, a prearranged racing, speed or demolition contest or in any stunting activity.

i. **War.**

"Bodily injury" or "property damage" due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

This exclusion applies only to liability assumed under a contract or agreement.

j. **Professional Services**

"Bodily injury", "property damage" or "personal and advertising injury" due to the rendering of or failure to render any professional service. This includes but is not limited to:

(1) Legal, accounting or advertising services;

(2) Preparing, approving, or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications;

(3) Supervisory, inspection, architectural or engineering activities;

(4) Medical, surgical, dental, x-ray or nursing services or treatment;

(5) Any health service or treatment;

(6) Any cosmetic or tonsorial service or treatment;

(7) Optical or hearing aid services including prescribing, preparation, fitting, demonstration, or distribution of ophthalmic products or hearing aid devices;

(8) Optometric services including but not limited to examination of the eyes and prescribing of ophthalmic lenses and exercises;

(9) Ear piercing services;

(10) Services in the practice of pharmacy.

(11) Computer consulting, design or programming services, including web site design.

**BUSINESS LIABILITY COVERAGE FORM**

Paragraphs (4) and (5) of this exclusion do not apply to Incidental Malpractice coverage afforded under paragraph 4. in Section A. - COVERAGE.

k. **Damage to Property**

"Property damage" to:

(1) Property you own, rent or occupy, including any costs or expenses incurred by you, or any other person, organization or entity, for repair, replacement, enhancement, restoration or maintenance of such property for any reason, including prevention of injury to a person or damage to another's property;

(2) Premises you sell, give away or abandon, if the "property damage" arises out of any part of those premises;

(3) Property loaned to you;

(4) Personal property in care, custody or control of the insured;

(5) That particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the "property damage" arises out of those operations; or

(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraphs (1), (3) and (4) of this exclusion do not apply to "property damage" (other than damage by fire) to premises, including the contents of such premises, rented to you for a period of 7 or fewer consecutive days. A separate Limit of Insurance applies to Damage To Premises Rented To You as described in Section D. - LIMITS OF INSURANCE.

Paragraph (2) of this exclusion does not apply if the premises are "your work" and were never occupied, rented or held for rental by you.

Paragraphs (3) and (4) of this exclusion do not apply to the use of elevators.

Paragraphs (3), (4), (5) and (6) of this exclusion do not apply to liability assumed under a sidetrack agreement.

Paragraph (4) of this exclusion does not apply to "property damage" to borrowed equipment while not being used to perform operations at a job site.

Exhibit 1
0029

**BUSINESS LIABILITY COVERAGE FORM**

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

l. **Damage to Your Product**

"Property damage" to "your product" arising out of it or any part of it.

m. **Damage to Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard". This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

n. **Damage to Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

o. **Recall Of Products, Work Or Impaired Property**

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

p. **"Personal and Advertising Injury":**

(1) Arising out of oral, written or electronic publication of material, if done by or at the direction of the insured with knowledge of its falsity;

(2) Arising out of oral, written or electronic publication of material whose first publication took place before the beginning of the policy period;

(3) Arising out of a criminal act committed by or at the direction of the insured;

(4) Arising out of any breach of contract, except an implied contract to use another's "advertising idea" in your "advertisement";

(5) Arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement";

(6) Arising out of the wrong description of the price of goods, products or services;

(7) Arising out of any violation of any intellectual property rights, such as patent, trademark, trade name, trade secret, service mark or other designation of origin or authenticity.

However, this exclusion does not apply to infringement, in your "advertisement", of

(a) Copyright;

(b) Slogan, unless the slogan is also a trademark, trade name, service mark or other designation of origin or authenticity; or

(c) Title of any literary or artistic work;

(8) Arising out of an offense committed by an insured whose business is:

(a) Advertising, broadcasting, publishing or telecasting;

(b) Designing or determining content of web sites for others; or

(c) An Internet search, access, content or service provider.

However, this exclusion does not apply to paragraphs a., b. and c. under the definition of "personal and advertising injury" in Section G. – LIABILITY AND MEDICAL EXPENSES DEFINITIONS.

For the purposes of this exclusion, placing an "advertisement" for or linking to others on your web site, by itself, is not considered the business of advertising, broadcasting, publishing or telecasting;

Form SS 00 08 04 01

Exhibit 1
0030

(9) Arising out of an electronic chat room or bulletin board you host, own, or over which you exercise control;

(10) Arising out of the unauthorized use of another's name or product in your e-mail address, domain name or metatag, or any other similar tactics to mislead another's potential customers;

(11) Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

(12) Arising out of:

(a) An "advertisement" for others on your web site;

(b) Placing a link to a web site of others on your web site; or

(c) Content from a web site of others displayed within a frame or border on your web site. Content includes information, code, sounds, text, graphics or images;

(13) Arising out of a violation of any anti-trust law; or

(14) Arising out of the fluctuation in price or value of any stocks, bonds or other securities.

Exclusions c. through i., k., l., m. and n. do not apply to damage by fire, lightning or explosion to premises rented to you. A separate Limit of Insurance applies to this coverage as described in Section D. - LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE.

2. **Applicable to Medical Expenses Coverage**

We will not pay expenses for "bodily injury":

a. **Any Insured**

To any insured, except "volunteer workers".

b. **Hired Person**

To a person hired to do work for or on behalf of any insured or a tenant of any insured.

c. **Injury On Normally Occupied Premises**

To a person injured on that part of premises you own or rent that the person normally occupies.

d. **Workers Compensation And Similar Laws**

To a person, whether or not an "employee" of any insured, if benefits for the "bodily injury" are payable or must be provided under a workers' compensation or disability benefits law or a similar law.

e. **Athletics Activities**

To a person injured while taking part in athletics.

f. **Products-Completed Operations Hazard**

Included with the "products-completed operations hazard".

g. **Business Liability Exclusions**

Excluded under Business Liability Coverage.

h. **War**

Due to war, whether or not declared, or any act or condition incidental to war. War includes civil war, insurrection, rebellion or revolution.

## C. WHO IS AN INSURED

1. If you are designated in the Declarations as:

a. An individual, you and your spouse are insureds, but only with respect to the conduct of a business of which you are the sole owner.

b. A partnership or joint venture, you are an insured. Your members, your partners and their spouses are also insureds, but only with respect to the conduct of your business.

c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your manager.

d. An organization other than a partnership or joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

e. A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

2. Each of the following is also an insured:

Exhibit 1
0031

**BUSINESS LIABILITY COVERAGE FORM**

a. Your "employees", other than either your "executive officers" (if you are an organization other than a partnership, joint venture or limited liability company) or your managers (if you are a limited liability company), but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business. However, none of these "employees" is an insured for:

(1) "Bodily injury" or "personal and advertising injury":

(a) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), or to a co-"employee" while that co-"employee" is either in the course of his or her employment or performing duties related to the conduct of your business;

(b) To the spouse, child, parent, brother or sister of that co-"employee" as a consequence of Paragraph (1)(a) above;

(c) For which there is any obligation to share damages with or repay someone else who must pay damages because of the injury described in Paragraphs (1)(a) or (b) above; or

(d) Arising out of his or her providing or failing to provide professional health care services.

(2) "Property damage" to property:

(a) Owned, occupied or used by; or

(b) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by you, any of your "employees", any partner or member (if you are a partnership or joint venture), or any member (if you are a limited liability company).

b. Any person (other than your "employee"), or any organization while acting as your real estate manager.

c. Any person or organization having proper temporary custody of your property if you die, but only:

(1) With respect to liability arising out of the maintenance or use of that property; and

(2) Until your legal representative has been appointed.

d. Your legal representative if you die, but only with respect to duties as such. That representative will have all your rights and duties under this insurance.

e. Any "employee" of the insured while acting in the scope of his/her duties as a retail pharmacist, or optician or optometrist.

f. **Additional Insureds by Contract, Agreement or Permit**

Any person or organization with whom you agreed, because of a written contract or agreement or permit, to provide insurance such as is afforded under this Business Liability Coverage Form, but only with respect to your operations, "your work" or facilities owned or used by you.

However, coverage under this provision does not apply:

(1) Unless the written contract or agreement has been executed or a permit has been issued prior to the "bodily injury", "property damage" or "personal and advertising injury".

(2) To any person or organization included as an insured under provision **g. (Broad Form Vendors)**.

(3) To any other person or organization shown in the Declarations as an Additional Insured.

**Coverage under this provision includes the following:**

(1) When an **engineer, architect or surveyor** becomes an insured under provision 2.f., the following additional exclusion applies:

"Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or the failure to render any professional services by or for you including:

(a) The preparing, approving, or failure to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; and

(b) Supervisory, inspection, architectural or engineering activities.

(2) When a **lessor of leased equipment** becomes an insured under provision 2.f., the following additional exclusions apply:

Exhibit 1
0032

(a) To any "occurrence" which takes place after the equipment lease expires; or

(b) To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

(3) When **owners or other interests from whom land has been leased** become an insured under provision 2.f., the following additional exclusions apply:

(a) Any "occurrence" which takes place after you cease to lease that land; or

(b) Structural alterations, new construction or demolition operations performed by or on behalf of the owners or other interests from whom land has been leased.

(4) When **managers or lessors of premises** become an insured under provision 2.f., the following exclusions apply:

(a) Any "occurrence" which takes place after you cease to be a tenant in that premises: or

(b) Structural alterations, new construction or demolition operations performed by or on behalf of the manager or lessors of the premises.

g. **Additional Insured - Broad Form Vendors**

Any person or organization with whom you agreed, because of a written contract or agreement to provide insurance, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business, subject to the following additional exclusions:

(1) The insurance afforded the vendor does not apply to:

(a) "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

(b) Any express warranty unauthorized by you;

(c) Any physical or chemical change in product made intentionally by the vendor;

(d) Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

(e) Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

(f) Demonstration, installation, servicing or repair operations except such operations performed at the vendor's premises in connection with the sale of the product;

(g) Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

(2) This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

(3) This provision g. does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Part.

(4) This provision g. does not apply if "bodily injury" or "property damage" included within the "products-completed operation hazard" is excluded either by the provisions of the Coverage Part or by endorsement.

h. **Broad Form Named Insured**

Any subsidiary and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of this coverage form.

Exhibit 1
0033

BUSINESS LIABILITY COVERAGE FORM

The insurance afforded herein for any subsidiary not shown in the Declarations as a named insured does not apply to injury or damage with respect to which an insured under this insurance is also an insured under another policy or would be an insured under such policy but for its termination or upon the exhaustion of its limits of insurance.

**i. Newly Formed or Acquired Organizations**

Any organization you newly acquire or form, other than a partnership or joint venture, and over which you maintain ownership or majority interest, will qualify as a Named Insured if there is no other similar insurance available to that organization. However:

(1) Coverage under this provision is afforded only until the 180th day after you acquire or form the organization or the end of the policy period, whichever is earlier; and

(2) Coverage under this provision does not apply to:

(a) "Bodily injury" or "property damage" that occurred; or

(b) "Personal and advertising injury" arising out of an offense

committed before you acquired or formed the organization.

**j. Additional Insured – Volunteer Workers**

Your "volunteer workers", but only while performing duties related to the conduct of your business.

(1) However, no "volunteer workers" are insureds for:

(a) "Bodily injury", "property damage" or "personal and advertising injury" arising out of rendering or the failure to render professional services.

(b) "Bodily injury" or "personal and advertising injury":

(I) To you, to your partners or members (if you are a partnership or joint venture), to your members (if you are a limited liability company), your other "volunteer workers" or to your "employees" arising out of and in the course of their duties for you;

(II) To the spouse, child, parent, brother or sister of your "volunteer workers" or your "employees" as a consequence of paragraph (1) (a) above; or

(c) "Property damage" to property:

(I) Owned, occupied or used by,

(II) Rented to, in the care, custody or control of, or over which physical control is being exercised for any purpose by

you, any of your other "volunteer workers", your "employees", any partner or member (if you are a partnership or joint venture) or any member (if you are a limited liability company).

**3. Additional Insured - Mobile Equipment**

With respect to "mobile equipment" registered in your name under any motor vehicle registration law, any person is an insured while driving such equipment along a public highway with your permission. Any other person or organization responsible for the conduct of such person is also an insured, but only with respect to liability arising out of the operation of the equipment, and only if no other insurance of any kind is available to that person or organization for this liability. However, no person or organization is an insured with respect to:

**a.** "Bodily injury" to a co-"employee" of the person driving the equipment; or

**b.** "Property damage" to property owned by, rented to, in the charge of or occupied by you or the employer of any person who is an insured under this provision.

No person or organization is an insured with respect to the conduct of any current or past partnership, joint venture or limited liability company that is not shown as a Named Insured in the Declarations.

**D. LIABILITY AND MEDICAL EXPENSES LIMITS OF INSURANCE**

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

Exhibit 1
0034

BUSINESS LIABILITY COVERAGE FORM

**2. Aggregate Limits**

The most we will pay for:

a. Injury or damages under the "products-completed operations hazard" arising from all "occurrences" during the policy period is the Products-Completed Operations Aggregate Limit shown in the Declarations.

b. All injury or damages, including medical expenses, arising from all "occurrences" during the policy period is the General Aggregate Limit shown in the Declarations.

This General Aggregate Limit applies separately to each of your "locations" owned by or rented to you.

"Location" means premises involving the same or connecting lots, or premises whose connection is interrupted only by a street, roadway or right-of-way of a railroad.

This aggregate limit does not apply to "property damage" to premises rented to you arising out of fire, lightning or explosion.

**3.** Subject to item **2.** above, the most we will pay for the sum of all damages because of all "bodily injury", "property damage" and medical expenses arising out of any one "occurrence" is the Liability and Medical Expenses Limit shown in the Declarations.

The most we will pay for all medical expenses because of "bodily injury" sustained by any one person is the Medical Expenses Limit shown in the Declarations.

**4.** Subject to item **2.** above, the most we will pay for the sum of all damages because of all "personal and advertising injury" sustained by any one person or organization is the Personal and Advertising Injury Limit shown in the Declarations.

**5.** The most we will pay under Business Liability Coverage for damages because of "property damage" to premises rented to you, or in the case of fire, while rented to you or temporarily occupied by you with permission of the owner, is the Damage To Premises Rented To You Limit shown in the Declarations.

The Damage to Premises Rented To You Limit applies to all damage proximately caused by the same event, whether such damage results from fire, lightning or explosion or any combination of the three.

If more than one limit of insurance under this policy and any endorsements attached thereto applies to any claim or "suit", the most we will pay under this policy and the endorsements is the single highest limit of liability of all coverages applicable to such claim or "suit". However, this paragraph does not apply to the Medical Expenses limit set forth in paragraph **3.** above.

The limits of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

**E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

**1. Bankruptcy**

Bankruptcy or insolvency of the insured or of the insured's estate will not relieve us of our obligations under the policy.

**2. Duties in The Event of Occurrence, Offense, Claim or Suit**

a. You must see to it that we are notified promptly of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

(1) How, when and where the "occurrence" or offense took place; and

(2) The names and addresses of any injured persons and witnesses; and

(3) The nature and location of any injury or damage arising out of the "occurrence" or offense.

This condition applies only when the "occurrence" or offense is known to:

(1) You, if you are an individual;

(2) A partner, if you are a partnership; or

(3) A manager if you are a limited liability company;

(4) An "executive officer" or insurance manager, if you are a corporation; or

(5) Any elected or appointed official, if you are a political subdivision or public entity.

b. If a claim is made or "suit" is brought against any insured, you must:

(1) Immediately record the specifics of the claim or "suit" and the date received; and

Form SS 00 08 04 01

Page 13 of 20

Exhibit 1
0035

BUSINESS LIABILITY COVERAGE FORM

(2) Notify us as soon as practicable.

You must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

But this condition will not be considered breached unless the breach occurs after such claim or "suit" is known to anyone listed in **2 .a. (1)** through **(5)** above.

c. You and any other involved insured must:

(1) Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

(2) Authorize us to obtain records and other information;

(3) Cooperate with us in the investigation, settlement of the claim or defense against the "suit"; and

(4) Assist us, upon our request, in the enforcement of any right against any person or organization that may be liable to the insured because of injury or damage to which this insurance may also apply.

d. No insureds will, except at their own cost, voluntarily make a payment, assume any obligation, or incur any expense, other than for first aid, without our consent.

3. **Financial Responsibility Laws**

a. When this policy is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided by the policy for "bodily injury" liability and "property damage" liability will comply with the provisions of the law to the extent of the coverage and limits of insurance required by that law.

b. With respect to "mobile equipment" to which this insurance applies, we will provide any liability, uninsured motorists, underinsured motorists, no-fault or other coverage required by any motor vehicle law. We will provide the required limits for those coverages.

4. **Legal Action Against Us**

No person or organization has a right under this coverage form:

a. To join us as a party or otherwise bring us into a "suit" asking for damages from an insured; or

b. To sue us on this coverage form unless all of its terms have been fully complied with.

A person or organization may sue us to recover on an agreed settlement or on a final judgment against an insured; but we will not be liable for damages that are not payable under the terms of this insurance or that are in excess of the applicable limit of insurance. An agreed settlement means a settlement and release of liability signed by us, the insured and the claimant or the claimant's legal representative.

5. **Separation of Insureds**

Except with respect to the Limits of Insurance, and any rights or duties specifically assigned in this policy to the first Named Insured, this insurance applies:

a. As if each Named Insured were the only Named Insured; and

b. Separately to each insured against whom a claim is made or "suit" is brought.

6. **Unintentional Failure to Disclose Hazards**

It is agreed that based on our reliance on your representations as to existing hazards, if unintentionally you should fail to disclose all such hazards at the inception date of your policy, we shall not deny any coverage under this Coverage Form because of such failure.

7. **Other Insurance    -    Primary Additional Insured**

If the written contract or agreement or permit requires this insurance to be primary for any person or organization with whom you agree to include in WHO IS AN INSURED, this Other Insurance Provision is applicable.

If other valid and collectible insurance is available for a loss we cover under this Business Liability Coverage Form, our obligations are limited as follows:

a. **Primary Insurance**

This insurance is primary. We will not seek contributions from other insurance available to the person or organization with whom you agree to include in WHO IS AN INSURED, except when b. applies.

b. **Excess Insurance**

This insurance is excess over:

(1) Any other insurance, whether primary, excess, contingent or on any other basis:

(a) That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

(b) That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

(c) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

(d) If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion g. of Section A. – Coverages.

(2) Any other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured by attachment of an endorsement.

When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(1) The total amount that all such other insurance would pay for the loss in the absence of this insurance; and

(2) The total of all deductible and self-insured amounts under all that other insurance.

We will share the remaining loss, if any, with any other insurance that is not described in this excess of the Limits of Insurance shown in the Declarations of this Coverage Part.

c. **Method of Sharing**

If all the other insurance permits contribution by equal shares, we will follow this method also. Under this approach, each insurer contributes equal amounts until it has paid its applicable limit of insurance or none of the loss remains, whichever comes first.

If any of the other insurance does not permit contribution by equal shares, we will contribute by limits. Under this method, each insurer's share is based on the ratio of its applicable limit of insurance to the total applicable limits of insurance of all insurers.

This provision provides such insurance as is afforded under this coverage form, but only with respect to your operations, "your work" or facilities owned or used by you.

F. **OPTIONAL COVERAGES**

If listed or shown as applicable in the Declarations, one or more of the following Optional Coverages also apply. These coverages are subject to the terms and conditions applicable to Business Liability Coverage in this policy, except as provided below:

1. **Additional Insured - Designated Person or Organization**

WHO IS AN INSURED under Section C. is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of your operations or premises owned by or rented to you.

2. **Additional Insured - Managers or Lessors of Premises**

a. WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or organization(s) shown in the Declarations; but only with respect to liability arising out of the ownership, maintenance or use of that part of the premises leased to you and shown in the Declarations and subject to the following additional exclusions:

b. Additional Exclusions

This insurance does not apply to:

(1) Any "occurrence" which takes place after you cease to be a tenant in that premises; or

(2) Structural alterations, new construction or demolition operations performed by or for that person or organization.

3. **Additional Insured - Grantor of Franchise**

WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability as grantor of franchise to you.

4. **Additional Insured - Lessor of Leased Equipment**

a. WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or organization(s) shown in the Declarations, but only with respect to their liability arising out of the maintenance, operation or use by you of equipment leased to you by such person(s) or organization(s).

b. Additional Exclusions:

This insurance does not apply:

Exhibit 1
0037

**BUSINESS LIABILITY COVERAGE FORM**

    (1)  To any "occurrence" which takes place after the equipment lease expires; or

    (2)  To "bodily injury" or "property damage" arising out of the sole negligence of the lessor.

5.  **Additional Insured - Owners or Other Interests From Whom Land Has Been Leased**

WHO IS AN INSURED under Section C. is amended to include as an insured the person or organization shown in the Declarations, but only with respect to liability arising out of the ownership, maintenance or use of that part of the land leased to you and shown in the Declarations and subject to the following additional exclusion:

This insurance does not apply to:

a.  Any "occurrence" that takes place after you cease to lease that land; or

b.  Structural alterations, new construction or demolition operations performed by or for the person or organization shown in the Declarations.

6.  **Additional Insured - State or Political Subdivision - Permits**

a.  WHO IS AN INSURED under Section C. is amended to include as an insured the state or political subdivision shown in the Declarations, but only with respect to operations performed by you or on your behalf for which the state or political subdivision has issued a permit.

b.  Additional Exclusions

This insurance does not apply to:

    (1)  "Bodily injury", "property damage" or "personal and advertising injury" arising out of operations performed for the state or political subdivision; or

    (2)  "Bodily injury" or "property damage" included in the "product-completed operations" hazard.

7.  **Additional Insured - Vendors**

a.  WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or organization(s) (referred to below as vendor) shown in the Declarations, but only with respect to "bodily injury" or "property damage" arising out of "your products" which are distributed or sold in the regular course of the vendor's business.

b.  Additional Exclusions

    (1)  The insurance afforded the vendor does not apply to:

    (a)  "Bodily injury" or "property damage" for which the vendor is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

This exclusion does not apply to liability for damages that the vendor would have in the absence of the contract or agreement;

    (b)  Any express warranty unauthorized by you;

    (c)  Any physical or chemical change in the product made intentionally by the vendor;

    (d)  Repackaging, unless unpacked solely for the purpose of inspection, demonstration, testing, or the substitution of parts under instructions from the manufacturer, and then repackaged in the original container;

    (e)  Any failure to make such inspections, adjustments, tests or servicing as the vendor has agreed to make or normally undertakes to make in the usual course of business, in connection with the distribution or sale of the products;

    (f)  Demonstration, installation, servicing or repair operations, except such operations performed at the vendor's premises in connection with the sale of the product;

    (g)  Products which, after distribution or sale by you, have been labeled or relabeled or used as a container, part or ingredient of any other thing or substance by or for the vendor.

  (2)  This insurance does not apply to any insured person or organization, from whom you have acquired such products, or any ingredient, part or container, entering into, accompanying or containing such products.

  (3)  This Provision 7. does not apply to any vendor included as an insured by an endorsement issued by us and made a part of this Coverage Form.

Exhibit 1
0038

(4) This Provision 7. does not apply if "bodily injury" or "property damage" included within the "products-completed operations hazard" is excluded either by the provisions of this Coverage Form or by endorsement.

8. **Additional Insured – Controlling Interest**

   WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or organization(s) shown in the Declarations but only with respect to their liability arising out of:

   a. Their financial control of you; or

   b. Premises they own, maintain or control while you lease or occupy these premises.

   This insurance does not apply to structural alterations, new construction and demolition operations performed by or for that person or organization.

9. **Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization.**

   WHO IS AN INSURED under Section C. is amended to include as insured the person or organization shown in the Declarations, but only with respect to liability arising out of your ongoing operations performed for that insured.

10. **Additional Insured – Co-Owner of Insured Premises**

    WHO IS AN INSURED under Section C. is amended to include as an insured the person(s) or Organization(s) shown in the Declarations, but only with respect to their liability as co-owner of the premises shown in the Declarations.

## G. LIABILITY AND MEDICAL EXPENSES DEFINITIONS

1. "Advertisement" means the widespread public dissemination of information or images that has the purpose of inducing the sale of goods, products or services through:

   a. (1) Radio;
      (2) Television;
      (3) Billboard;
      (4) Magazine;
      (5) Newspaper;

   b. The Internet, but only that part of a web site that is about goods, products or services for the purposes of inducing the sale of goods, products or services; or

   c. Any other publication that is given widespread public distribution.

However, "advertisement" does not include:

a. The design, printed material, information or images contained in, on or upon the packaging or labeling of any goods or products; or

b. An interactive conversation between or among persons through a computer network.

2. "Advertising idea" means any idea for an "advertisement".

3. "Auto" means a land motor vehicle, trailer or semi-trailer designed for travel on public roads, including any attached machinery or equipment. But "auto" does not include "mobile equipment".

4. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

5. "Coverage territory" means:

   a. The United States of America (including its territories and possessions), Puerto Rico and Canada;

   b. International waters or airspace, but only if the injury or damage occurs in the course of travel or transportation between any places included in a. above;

   c. All other parts of the world if the injury or damage arises out of:

      (1) Goods or products made or sold by you in the territory described in a. above;

      (2) The activities of a person whose home is in the territory described in a. above, but is away for a short time on your business; or

      (3) "Personal and advertising injury" offenses that take place through the Internet or similar electronic means of communication

   provided the insured's responsibility to pay damages is determined in the United States of America (including its territories and possessions), Puerto Rico or Canada, in a suit on the merits according to the substantive law in such territory, or in a settlement we agree to.

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

7. "Executive officer" means a person holding any of the officer positions created by your charter, constitution, by-laws or any other similar governing document.

Exhibit 1
0039

BUSINESS LIABILITY COVERAGE FORM

8. "Hostile fire" means one which becomes un-controllable or breaks out from where it was intended to be.

9. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

   a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

   b. You have failed to fulfill the terms of a contract or agreement:

   if such property can be restored to use by:

   a. The repair, replacement, adjustment or removal of "your product" or "your work"; or

   b. Your fulfilling the terms of the contract or agreement.

10. "Insured contract" means:

   a. A contract for a lease of premises. However, that portion of the contract for a lease of premises that indemnifies any person or organization for damage by fire to premises while rented to you or temporarily occupied by you with permission of the owner is not an "insured contract";

   b. A sidetrack agreement;

   c. Any easement or license agreement;

   d. Any obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;

   e. An elevator maintenance agreement; or

   f. That part of any other contract or agreement pertaining to your business (including an indemnification of municipality in connection with work performed for a municipality), under which you assume the liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.

   Paragraph f. does not include that part of any contract or agreement

   (1) That indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   (a) Preparing, approving or failing to prepare or approve maps, shop drawings, opinions, reports, surveys, field orders, change orders, designs or drawings and specifications; or

   (b) Giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage; or

   (2) Under which the insured, if an architect, engineer or surveyor, assumes liability for an injury or damage arising out of the insured's rendering or failure to render professional services, including those listed in (1) above and supervisory, inspection, architectural or engineering activities.

11. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include a "temporary worker".

12. "Loading or unloading" means the handling of property:

   a. After it is moved from the place where it is accepted for movement into or onto an aircraft, watercraft or "auto";

   b. While it is in or on an aircraft, watercraft or "auto"; or

   c. While it is being moved from an aircraft, watercraft or "auto" to the place where it is finally delivered;

   but "loading or unloading" does not include the movement of property by means of a mechanical device, other than a hand truck, that is not attached to the aircraft, watercraft or "auto".

13. "Mobile equipment" means any of the following types of land vehicles, including any attached machinery or equipment:

   a. Bulldozers, farm machinery, forklifts and other vehicles designed for use principally off public roads;

   b. Vehicles maintained for use solely on or next to premises you own or rent;

   c. Vehicles that travel on crawler treads;

   d. Vehicles, whether self-propelled or not, on which are permanently mounted:

   (1) Power cranes, shovels, loaders, diggers or drills; or

   (2) Road construction or resurfacing equipment such as graders, scrapers or rollers;

Form SS 00 08 04 01

Exhibit 1
0040

BUSINESS LIABILITY COVERAGE FORM

e. Vehicles not described in **a., b., c.,** or **d.** above that are not self-propelled and are maintained primarily to provide mobility to permanently attached equipment of the following types:

   (1) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment; or

   (2) Cherry pickers and similar devices used to raise or lower workers;

f. Vehicles not described in **a., b., c.,** or **d.** above maintained primarily for purposes other than the transportation of persons or cargo.

However, self-propelled vehicles with the following types of permanently attached equipment are not "mobile equipment" but will be considered "autos":

   (1) Equipment designed primarily for:

     (a) Snow removal;

     (b) Road maintenance, but not construction or resurfacing; or

     (c) Street cleaning;

   Paragraphs (a), (b) and (c) above do not apply to self-propelled vehicles of less than 1,000 pounds gross vehicle weight.

   (2) Cherry pickers and similar devices mounted on automobile or truck chassis and used to raise or lower workers; and

   (3) Air compressors, pumps and generators, including spraying, welding, building cleaning, geophysical exploration, lighting and well servicing equipment.

14. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

15. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

a. False arrest, detention or imprisonment;

b. Malicious prosecution;

c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that the person occupies, committed by or on behalf of its owner, landlord or lessor;

d. Oral, written or electronic publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

e. Oral, written or electronic publication of material that violates a person's right of privacy;

f. Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement";

g. Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement"; or

h. Discrimination or humiliation that results in injury to the feelings or reputation of a natural person, but only if such discrimination or humiliation is:

   (1) Not done intentionally by or at the direction of:

     (a) The insured; or

     (b) Any executive officer, director, stockholder, partner or member of the insured; and

   (2) Not directly or indirectly related to the employment, prospective employment or termination of employment of any person or persons by any insured.

This paragraph **h.** does not apply in the States of Nebraska and Kansas.

16. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

17. "Products-completed operations hazard";

a. Includes all "bodily injury" and "property damage" arising out of "your product" or "your work" except:

   (1) Products that are still in your physical possession; or

   (2) Work that has not yet been completed or abandoned.

The "bodily injury" or "property damage" must occur away from premises you own or rent, unless your business includes the selling, handling or distribution of "your product" for consumption on premises you own or rent.

b. "Your work" will be deemed completed at the earliest of the following times:

   (1) When all of the work called for in your contract has been completed.

Exhibit 1
0041

BUSINESS LIABILITY COVERAGE FORM

(2) When all of the work to be done at the site has been completed if your contract calls for work at more than one site.

(3) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

c. This hazard does not include "bodily injury" or "property damage" arising out of:

(1) The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle created by the "loading or unloading" of it; or

(2) The existence of tools, uninstalled equipment or abandoned or unused materials.

18. "Property damage" means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

Computerized or electronically stored data, programs or software are not tangible property.

19. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

a. An arbitration proceeding in which such damages are claimed and to which you must submit or do submit with our consent; or

b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which you submit with our consent.

20. "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.

21. "Volunteer worker" means a person who is not your "employee", and who donates his or her work and acts at the direction of and within the scope of duties determined by you, and is not paid a fee, salary or other compensation by you or anyone else for their work performed for you.

22. "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

c. Does not include vending machines or other property rented to or located for the use of others but not sold.

23. "Your work":

a. Means:

(1) Work or operations performed by you or on your behalf; and

(2) Materials, parts or equipment furnished in connection with such work or operations.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

(2) The providing of or failure to provide warnings or instructions.

Form SS 00 08 04 01

Exhibit 1
0042

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# ASBESTOS HAZARD EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to any damages, judgments, settlements, loss, costs or expenses that:

1. May be awarded or incurred by reason of any claim or suit alleging actual or threatened injury or damage of any nature or kind to persons or property which would not have occurred in whole or in part but for the asbestos hazard; or

2. Arise out of any request, demand or order to test for, monitor, clean up, remove, encapsulate, contain, treat, detoxify or neutralize or in any way respond to or assess the effects of an asbestos hazard; or

3. Arise out of any claim or suit for damages because of testing for, monitoring, cleaning up, removing, encapsulating, containing, treating, detoxifying or neutralizing or in any way responding to or assessing the effects of an asbestos hazard.

As used in this exclusion, asbestos hazard means an exposure or threat of exposure to the actual or alleged properties of asbestos and includes the mere presence of asbestos in any form.

Form SS 05 12 03 92   Printed in U.S.A.  (NS)

Copyright, Hartford Fire Insurance Company, 1992

Exhibit 1
0043

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EXCLUSION – LAWYERS PROFESSIONAL LIABILITY

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render professional legal services by a lawyer or by any other person performing such legal services.



**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT-RELATED PRACTICES EXCLUSION

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**

This insurance does not apply to "bodily injury" or "personal and advertising injury" to:

(1) A person arising out of any:

   (a) Refusal to employ that person;

   (b) Termination of that person's employment; or

   (c) Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation or discrimination directed at that person; or

(2) The spouse, child, parent, brother or sister of that person as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in paragraphs (a), (b), or (c) above is directed.

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

Form SS 05 40 03 00

© 2000, The Hartford

Page 1 of 1

Exhibit 1
0045

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# EXCLUSION - NUCLEAR ENERGY LIABILITY

1. This insurance does not apply:

   a. To any injury or damage:

      (1) With respect to which an insured under the policy is also an insured under a nuclear energy liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Atomic Energy Liability Underwriters or Nuclear Insurance Association of Canada, or any of their successors, or would be an insured under any such policy but for its termination upon exhaustion of its limit of liability; or

      (2) Resulting from the "hazardous properties" of "nuclear material" and with respect to which:

         (a) Any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereof; or

         (b) The insured is, or had this policy not been issued would be, entitled to indemnity from the United States of America, or any agency thereof, under any agreement entered into by the United States of America, or any agency thereof, with any person or organization.

   b. Under any Medical Payments or Medical Expenses Coverage, to expenses incurred with respect to "bodily injury" resulting from the "hazardous properties" of "nuclear material" and arising out of the operation of a "nuclear facility" by any person or organization.

   c. To any injury or damage resulting from the "hazardous properties" of "nuclear material", if:

      (1) The "nuclear material":

         (a) Is at any "nuclear facility" owned by, or operated by or on behalf of, an insured; or

         (b) Has been discharged or dispersed therefrom;

      (2) The "nuclear material" is contained in "spent fuel" or "waste" at any time possessed, handled, used, processed, stored, transported or disposed of by or on behalf of an insured; or

      (3) The injury or damage arises out of the furnishing by any insured of any "technology services" in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; or

      (4) The injury or damage arises out of the furnishing by an insured of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any "nuclear facility"; but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (4) applies only to "property damage" to such "nuclear facility" and any property thereat.

2. As used in this exclusion:

   a. "Byproduct material", "source material" and "special nuclear material" have the meanings given them in the Atomic Energy Act of 1954 or in any law amendatory thereof.

   b. "Hazardous properties" include radioactive, toxic or explosive properties.

   c. "Nuclear facility" means:

      (1) Any "nuclear reactor";

      (2) Any equipment or device designed or used for:

Form SS 05 47 09 01

© 2001, The Hartford

(a) Separating the isotopes of uranium or plutonium;

(b) Processing or utilizing "spent fuel"; or

(c) Handling, processing or packaging "waste";

(3) Any equipment or device used for the processing, fabricating or alloying of "special nuclear material" if at any time the total amount of such material in the custody of the insured at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium 233 or any combination thereof, or more than 250 grams of uranium 235;

(4) Any structure, basin, excavation, premises or place prepared or used for the storage or disposal of "waste";

and includes the site on which any of the foregoing is located, all operations conducted on such site and all premises used for such operations.

d. "Nuclear material" means "byproduct material", "source material" or "special nuclear material".

e. "Nuclear reactor" means any apparatus designed or used to sustain nuclear fission in a self-supporting chain reaction or to contain a critical mass of fissionable material.

f. Injury or damage and "property damage" include all forms of radioactive contamination of property.

g. "Spent fuel" means any fuel element or fuel component, solid or liquid, which has been used or exposed to radiation in a "nuclear reactor".

h. "Technology services" means:

(1) Consulting, analysis, design, installation, training, maintenance, support and repair of or on: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(2) Integration of systems;

(3) Processing of, management of, mining or warehousing of data;

(4) Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

(5) Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

(6) Design and development of: code, software or programming; or

(7) Providing software application: services, rental or leasing.

i. "Waste" means any waste material:

(1) Containing "byproduct material" other than the tailings or wastes produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its "source material" content; and

(2) Resulting from the operation by any person or organization of any "nuclear facility" included under the first two paragraphs of the definition of "nuclear facility."





**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CAP ON LOSSES FROM CERTIFIED ACTS OF TERRORISM

This endorsement modifies insurance provided under the following:

**BUSINESS LIABILITY COVERAGE FORM**
**OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE FORM**

A. With respect to any one or more "certified acts of terrorism", we will not pay any amounts for which we are not responsible under the terms of the federal Terrorism Risk Insurance Act of 2002 (including subsequent acts of Congress pursuant to the Act) due to the application of any clause which results in a cap on our liability for payments for terrorism losses.

B. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act of 2002.  The federal Terrorism Risk Insurance Act of 2002 sets forth the following criteria for a "certified act of terrorism":

1. The act resulted in aggregate losses in excess of $5 million; and

2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

**Form SS 50 30 06 03**

© 2003, The Hartford

**Page 1 of 1**

Exhibit 1
0048

COPY

1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
      A Limited Liability Partnership
2      Including Professional Corporations
   ROBERT S. GERBER, Cal. Bar No. 137961
3  MATTHEW W. HOLDER, Cal. Bar No. 217619
   MICHAEL MURPHY, Cal. Bar No. 234695
4  12275 El Camino Real, Suite 200
   San Diego, California  92130-2006
5  Telephone:    858-720-8900
   Facsimile:    858-509-3691
6

7  Attorneys for Plaintiffs HILBORNE, HAWKIN
   & CO.; and ASIA TRADEMARK, LTD.
8

9              SUPERIOR COURT OF THE STATE OF CALIFORNIA

10    FOR THE COUNTY OF SAN DIEGO, NORTH COUNTY JUDICIAL DISTRICT

11

12
   HILBORNE, HAWKIN & CO.; and ASIA        Case No.    37-2007-00054248-CU-BT-NC
13 TRADEMARK, LTD., a wholly-owned
   subsidiary of Hilborne, Hawkin & Co.,    **COMPLAINT FOR DAMAGES AND**
14                                           **INJUNCTIVE RELIEF BASED ON**
                      Plaintiff,             **THE FOLLOWING CAUSES OF**
15                                           **ACTION:**
           v.
16                                           1. **INTENTIONAL**
   IRA DICKSTEIN,  an individual; ROSS         **MISAPPROPRIATION OF TRADE**
17 ADAM EPSTEIN, an individual; GARY          **SECRETS**
   M. NATH, an individual; A&S PATENTS      2. **UNFAIR COMPETITION**
18 AND TRADEMARKS, INC., a California       3. **BREACH OF CONTRACT**
   corporation; THE NATH LAW GROUP;        4. **CIVIL CONSPIRACY**
19 NATH & ASSOCIATES; and
   DOES 1 through 10, inclusive,
20
                      Defendants.
21

22

23

24

25

26

27

28

W02-WEST:DK4\400353164.3

Exhibit 2
0049
COMPLAINT

For causes of action, Plaintiffs allege as follows:

### I.

### __PARTIES__

1.      Plaintiff HILBORNE, HAWKIN & CO. ("HH") is a California corporation.  At all other times relevant to this action, HH was a California professional law corporation specializing in international trademark and patent registration.  HH's principal place of business is in Orange, California.  Plaintiff ASIA TRADEMARK, LTD. ("ATL") is a Hong Kong limited liability company, organized in 1989:   ATL and Worldwide Trademarks & Patents Pte, Ltd. ("Worldwide") are wholly-owned subsidiaries of HH (HH and ATL are collectively known herein as "Plaintiffs").

2.      Defendant IRA DICKSTEIN ("DICKSTEIN") is an attorney licensed to practice law in California.  HH employed DICKSTEIN from October 22, 2002, to October 16, 2006, inclusive, when he resigned.  On information and belief, DICKSTEIN is currently practicing law in San Diego, California at 12264 El Camino Real, Suite 400, San Diego, California 92130, within this judicial district.

3.      Plaintiffs are informed and believe, and based thereon allege, that defendant DICKSTEIN also resides in the County of San Diego in the judicial district.

4.      Defendant ROSS ADAM EPSTEIN ("EPSTEIN") is an attorney licensed to practice law in California.  Plaintiffs are informed and believe that EPSTEIN is the managing partner of the San Diego office of The Nath Law Group, also known as Nath & Associates (collectively, "NLG").  EPSTEIN's current office address is 12264 El Camino Real, Suite 400, San Diego, California 92130.

W02-WEST:DK4\400353164.3

Exhibit 2
0050
COMPLAINT

1    5.    Plaintiffs are informed and believe, and based thereon allege that defendant
2  EPSTEIN resides in the County of San Diego in this judicial district.

3

4    6.    On information and belief, defendant GARY M. NATH ("NATH") is an attorney
5  licensed to practice law in New Jersey but not California.  NATH is the managing partner and
6  founder of NLG.

7

8    7.    Plaintiffs are informed and believe, and based thereon allege that NATH profits
9  directly from NLG's practice in San Diego, California, which is located at 12264 El Camino Real,
10  Suite 400, San Diego, California 92130.

11

12    8.    A&S PATENTS AND TRADEMARKS, INC. ("A&S") is a California Corporation
13  with its principal place of business at 12264 El Camino Real, Suite 400, San Diego, California
14  92130, which is the same address as the San Diego office of NLG.

15

16    9.    Plaintiffs are informed and believe, and based thereon allege that defendant
17  DICKSTEIN is the President of A&S.  Plaintiff is further informed and believes, and based
18  thereon alleges that defendants EPSTEIN and NATH are officers, directors and/or investors of
19  A&S and/or profit directly from A&S' business.

20

21    10.    THE NATH LAW GROUP, also known as Nath & Associates, is a law firm doing
22  business in San Diego, California.  Plaintiffs are informed and believe, and based thereon allege
23  that NLG is a partnership with its California office located at 12264 El Camino Real, Suite 400,
24  San Diego, California 92130.

25

26    11.    Defendants DOES 1 through 10, inclusive, are sued herein under fictitious names.
27  Their true names and capacities are unknown to Plaintiffs.  When their true names and capacities
28  are ascertained, Plaintiffs will amend this complaint by inserting their true names and capacities

-2-

Exhibit 2
0051

1    herein. Plaintiffs are informed and believe, and based thereon allege that each of the fictitiously

2    named defendants is responsible in some manner for the occurrences alleged in this complaint, and

3    that Plaintiffs' damages as alleged in this complaint were actually and proximately caused by such

4    defendants (DOES 1-10, DICKSTEIN, EPSTEIN, NATH, A&S, and NLG are collectively

5    referred to herein as "Defendants").

6

7          12.     Plaintiffs are informed and believe, and based thereon allege, that at all times

8    mentioned in this complaint, each of the Defendants was the agent of each of the remaining

9    defendants, and in doing the things hereinafter alleged, was acting within the course and scope of

10    such agency and with the permission and consent of his/her co-defendants.

11

12                                  **II.**

13                     **JURISDICTION AND VENUE**

14

15          13.     This Court has jurisdiction over this action pursuant to California Code of Civil

16    Procedure ("CCP") sections 32.5, 86(a)(8), 88, and 580(b), because Plaintiffs seek, *inter alia*,

17    permanent injunctive relief and bring tort and contract claims under California law.

18

19          14.     Venue is proper in this Court pursuant to CCP section 395 because Plaintiffs are

20    informed and believe, and based thereon allege, that defendants DICKSTEIN and EPSTEIN each

21    reside in San Diego County.

22

23          15.     Venue is also proper in this Court pursuant to CCP section 395.5 because A&S'

24    principal place of business is in San Diego County, NLG maintains an office in San Diego county

25    and does business in San Diego county, and San Diego county is where the breaches alleged

26    herein occurred and liability alleged herein arose with respect to all Defendants.

27

28

Exhibit 2
0052

W02-WEST:DK4\400353164.3                                            COMPLAINT

## III.

## FACTUAL BACKGROUND

A.    The Development of HH's Marketing and Financial Trade Secrets

16.    HH was established in 1965, in the Sultanate of Brunei. Vinod Kumar, the owner and sole shareholder of HH at the time, moved the firm to California in 1989. To maintain close, local ties in Asia, the wholly-owned subsidiary firm of Asia Trademark, Ltd. was incorporated in Hong Kong in 1989.

17.    Initially, Plaintiffs' foreign trademark and patent practice was limited to Brunei. However, over the years, Plaintiffs' slowly expanded their practice to include trademark and patent registration in numerous foreign countries.

18.    Plaintiffs' choice of regions in which to focus their practice was the result of years of their efforts doing extensive research, establishing strategic local contacts with agents, associates and officials, tracking regional trends, acquiring knowledge about local registries and pending legislation, and developing innovative methods of protecting the intellectual property interests of global corporations.

19.    Further, Mr. Kumar was familiar with the laws and procedures of most of the selected countries, as he was a member of the English bar, which licensed him to practice in all former British Territories. He also lived and practiced in Southeast Asia for a number of years.

20.    Plaintiffs' research has been ongoing for many years, has required a considerable investment of time and expense, and has enabled HH to identify regions in which the foreign trademark and patent registration needs of large, global companies were not being adequately met.

Exhibit 2
0053

W02-WEST:DK4W00353164.3

COMPLAINT

21.    To capitalize on the value of his research, experience, strategic contacts and knowledge of untapped markets in specific foreign countries, Plaintiffs developed, through the investment of time, effort and money, a unique and profitable confidential and proprietary business, advertising and marketing methodology for Plaintiffs ("the Model.")

22.    Plaintiffs' Model relies in part on a special method of advertising.

23.    Plaintiffs are the only entities to be marketed in a certain manner in such advertising in seventy-four (74) countries under the names Hilborne, Hawkin & Co, Asia Trademark Ltd., Worldwide Trademarks and Patents, Ltd., and Hilhawk Sdn. Bhd.

24.    Countries selected are based upon extensive research, effort and experience and are often remote and have few or no other firms registering trademarks or patents listed under them.

25.    Plaintiffs' unique method of advertising and practicing in countries where few if any other firms register trademarks or patents has allowed Plaintiffs to capitalize on numerous small markets and generate substantial revenue therefrom. The decision to advertise and conduct business in these virtually untapped countries is based on extensive, confidential, and proprietary research performed at great time and expense, which many firms are unwilling to incur.

26.    Without access to Plaintiffs' research, experience, strategic contacts, and financial records, other foreign trademark and patent registration firms were and are disinterested in the group of countries in which Plaintiffs advertise and perform services.

27.    Plaintiff's intuition, research and strategic contacts resulted in significant business from the group of countries and together with Plaintiffs' Model proved a stable, successful and profitable venture.

Exhibit 2
0054

28.    Plaintiffs derive substantial income from their Model.

29.    Plaintiffs have always taken reasonable steps under the circumstances to ensure and maintain the confidentiality and secrecy of their proprietary information, including the basis for their Model.  These steps include, but are not limited to: (1) restricting access to confidential information only to those employees (*e.g.*, attorneys and account supervisors) who must use the confidential information to perform their jobs for Plaintiffs; and (2) requiring employees and others, including potential investors or business partners, to whom Plaintiffs grant access to confidential and proprietary information, to sign agreements containing confidentiality provisions and otherwise agree to maintain the confidentiality of such information.

B.    **DICKSTEIN's Access to HH's Trade Secrets**

30.    On or around October 22, 2003, DICKSTEIN was hired as an associate attorney at HH and he remained an associate at HH until October 16, 2006, when he left the firm.

31.    Plaintiffs are informed and believe, and based thereon allege, that between 1978, when DICKSTEIN was admitted to practice, and October 2003, when he began working at HH, DICKSTEIN did not specialize in the registration of foreign trademarks and patents.

32.    On information and belief, prior to joining HH, DICKSTEIN did not file trademark or patent applications or have any business dealings whatsoever in the countries in which Plaintiffs advertise and focus their practice.

33.    As a result of his employment at HH as an associate attorney, which is a position of responsibility, trust and confidence, HH granted DICKSTEIN access to confidential trade secret and proprietary business information concerning Plaintiffs, including the Model.

Exhibit 2
0055

W02-WEST:DK4\400353164.3                                    COMPLAINT

34.    Additionally, as a result of working for HH, DICKSTEIN became familiar with Plaintiffs' strategic associates and contacts in foreign countries.    Plaintiffs developed the relationships with these associates and contacts over long periods and through extensive business dealings.  These exclusive relationships allowed Plaintiffs to obtain preferred treatment and rates for trademark and patent related services from such associates and contacts, which are key components of the Model.

35.    All of this information was only available to DICKSTEIN through his employment with HH, and he knew that such information was highly confidential.  He also knew that he had a fiduciary duty as an employee of HH to maintain the confidentiality of such information.  He further knew that Plaintiffs had invested much time, effort and expense in developing the Model.

36.    Because he was privy to confidential financial information concerning the substantial revenue generated by Plaintiffs' trademark and patent registration practice in selected countries and the Model, DICKSTEIN knew that such information was highly valuable.  He also knew that information regarding Plaintiffs' Model derived independent economic value from not being disclosed to the general public.

37.    DICKSTEIN further knew that disclosure or use of such confidential trade secret and proprietary business information outside of HH would be extremely damaging to Plaintiffs' business.

**C.    EPSTEIN, NATH and NLG's Access to Plaintiffs' Trade Secrets**

38.    In or around March 2003, a professional search consultant contacted Plaintiffs on behalf of NLG.  The search consultant informed Plaintiffs that NLG was interested in a possible merger with HH.  In response to NLG's overtures, Mr. Kumar agreed to meet with several NLG partners to discuss a possible merger.

Exhibit 2
0056

W02-WEST:DK4\400353164.3                                    COMPLAINT

39.    In or around March 2003, Mr. Kumar met with NATH, EPSTEIN and other NLG partners and discussed the possible merger between HH and NLG.  During the course of those meetings, NATH and EPSTEIN explained to Mr. Kumar that one reason NLG was interested in merging with HH was because Plaintiffs had an established foreign trademark and patent registration business and its experience, Model, and strategic relationships throughout the world would compliment NLG's primarily domestic patent and trademark prosecution business by allowing it to expand into foreign countries where NLG did not do business.

40.    At the outset of those meetings and discussions, the parties orally agreed that the information regarding Plaintiffs that Mr. Kumar provided to NATH, EPSTEIN and the other NLG partners was confidential and could not be used by NLG or any of its attorneys to compete with HH or its subsidiaries.

41.    During the merger meetings and negotiations, the Plaintiffs disclosed substantial confidential information and trade secrets to NLG, including: (1) the specifics of Plaintiffs' Model; (2) complete background information regarding HH since its inception in Brunei in 1969; (3) complete client lists and strategic relationships with Fortune 500 clients; (4) Plaintiffs' marketing strategy and how and why Plaintiffs extensively used certain advertising; (5) Plaintiffs' financial information, which contained the revenue generated from each client, and details on the most profitable foreign jurisdictions for trademark and patent filing; and (6) data on HH personnel.

42.    NATH, EPSTEIN and the other partners of NLG knew that the information regarding Plaintiffs that they obtained was confidential trade secret and proprietary business information.  As experienced lawyers, NATH and EPSTEIN also knew the importance of keeping such information confidential and the consequences of unauthorized disclosure or use of such information.

Exhibit 2
0057

W02-WEST:DK4\400353164.3                                                    COMPLAINT

43.    Plaintiffs are informed and believe, and based thereon allege, that NATH, EPSTEIN and the other partners of NLG with whom Mr. Kumar met disclosed the confidential trade secret and proprietary business information they obtained regarding Plaintiffs to other individuals who were partners of NLG at the time.

44.    Plaintiffs have been vigilant in keeping their trade secret information confidential.

**D.    Additional Disclosure to EPSTEIN of Plaintiffs' Trade Secrets**

45.    In or around April 2006, Mr. Kumar again contacted EPSTEIN and inquired as to whether NLG might be interested in purchasing Plaintiffs. EPSTEIN informed Mr. Kumar that he was contemplating leaving NLG and might be interested in individually purchasing Plaintiffs.

46.    In or around April 2006, Mr. Kumar and EPSTEIN began negotiating the terms of the potential purchase and sale of Plaintiffs. Mr. EPSTEIN's offer included the purchase of HH and all its assets, including HH's subsidiary, ATL. EPSTEIN represented to Mr. Kumar that he was interested in purchasing HH so he could immediately expand his intellectual property practice into countries where he and NATH did not and had not done business.

47.    By purchasing Plaintiffs, Mr. EPSTEIN would acquire the Model and the fruits of Plaintiffs' more than 38 years of labor, experience and contacts. EPSTEIN would be able to do this without expending his own time and money conducting extensive research, making contacts, developing relationships and locating and hiring staff and attorneys familiar with intellectual property rights and laws in the foreign countries where Plaintiffs have done, and are currently doing, business.

W02-WEST:DK4\400353164.3

Exhibit 2
0058
COMPLAINT

48.    In furtherance of defendant EPSTEIN's goal of purchasing HH and its assets, EPSTEIN sent Mr. Kumar a Letter of Intent.   The April 18, 2006 Letter of Intent sent by EPSTEIN to Mr. Kumar included the following due diligence/confidentiality provision:

> "Buyer's obligations to proceed with the transactions contemplated hereby are subject to satisfactory completion of his due diligence. **All information and documents derived through such investigation will be kept and maintained by Buyer as confidential**, and if the Closing does not occur, will be returned to Seller."

49.    In addition to this provision requiring that EPSTEIN keep confidential all information and documents received during the course of his negotiations with Mr. Kumar, EPSTEIN orally promised he would not use any of the trade secret and other proprietary and confidential information to compete with Plaintiffs should the negotiations fail to result in a sale of Plaintiffs and their assets to EPSTEIN.

50.    EPSTEIN's Letter of Intent further showed his understanding of the importance and economic advantage of being the sole entity to operate under Plaintiffs' Model because it would have required Mr. Kumar to "execute a 15 year non-competition agreement in favor of the Purchaser of [HH]."

51.    In furtherance of the potential sale of HH and it assets to defendant EPSTEIN, Mr. Kumar provided EPSTEIN with extensive confidential and proprietary information about Plaintiffs. The confidential proprietary and trade secret information disclosed included Plaintiffs Model including but not limited to the countries in which Plaintiffs operate and why those particular countries were selected, which countries generate the most revenue and why, strategic contacts in those countries, Plaintiffs' clients who benefited from Plaintiffs' practice in the

Exhibit 2
0059

1  selected countries, the methodology and research behind Plaintiffs' choice of select jurisdictions,
2  and the extensive effort and research which is the foundation for Plaintiffs' Model.

3

4       52.    EPSTEIN knew this information constituted confidential trade secret and
5  proprietary business information.

6

7       53.    EPSTEIN agreed to proceed with the sale and purchase of HH only if Mr. Kumar
8  would agree to a restriction against advertising in Plaintiffs' manner after the sale of HH.

9

10      54.    EPSTEIN also visited the offices of HH and again met the personnel of HH,
11 including Mr. DICKSTEIN to discuss confidential information.

12

13      55.    EPSTEIN's understanding of the value of the trade secret information concerning
14 Plaintiffs' Model is also evidenced in the Purchase and Sale Agreement that EPSTEIN and
15 Plaintiffs drafted in contemplation of the sale of HH. The last draft of the agreement, which was
16 unsigned, expressly prohibited Mr. Kumar from advertising in the INTA Membership Directory.
17 In that same draft, EPSTEIN agreed that he would not hire any HH employees or use any foreign
18 agents of Plaintiffs', should the parties fail to complete the sale of HH. The agreement specifically
19 provides as follows:

20

21          2.8  During the term of this Agreement, neither Buyer nor Seller
22          shall divulge trade secrets and/or client lists, including HH's client's
23          agents in foreign countries, to third parties without their joint
24          consents.

25

26          2.9  During the term of this Agreement, neither Buyer nor Seller
27          shall employ any employees of HH for any other business or
28          enterprise in which Buyer or Seller is involved either as an owner,

Exhibit 2
0060

-11-

employee, investor, or other foreign agents who currently register trademarks....

2.11 In the event Buyer breaches this Agreement, he is prohibited from employing any then current staff of HH including dealing with any agents HH used for registering foreign trademarks at the time of Buyer's exit from HH in his future endeavors for a period of ten (10) years from the date Buyer exits HH....

2.12 ...The clients of HH at the time of the default shall remain the clients of HH and Buyer agrees not to complete with HH for five (5) years after his exit from HH and further agrees not to advertise a new endeavor in the International Trademark Association Directory for a period of ten (10) years after the breach.... Buyer further agrees not to contact or solicit legal work through the foreign agents that HH is then using to register trademarks....

56. The draft agreement of purchase and sale reflects the negotiations and oral agreements made between Mr. Kumar and Plaintiffs on the one hand and EPSTEIN on the other, during the course of their negotiations regarding the purchase and sale of HH.

57. EPSTEIN was an attorney and knew the importance of safeguarding the confidential trade secret and proprietary business information obtained from Plaintiffs.

58. EPSTEIN knew that such confidential and trade secret information derived independent economic value from not being disclosed to the general public.

Exhibit 2
0061

W02-WEST:DK4\400353164.3

COMPLAINT

59.     The access to Plaintiffs' confidential trade secret and proprietary business information that Plaintiffs granted initially to NATH, EPSTEIN, NLG and other partners of NLG and later to EPSTEIN alone (purportedly) was based entirely on their express agreements, collectively and individually, to maintain such information as confidential and not to use it to compete with Plaintiffs if the merger with or sale of HH were not consummated.

60.     Apart from these confidential disclosures that were necessary during the merger and sale negotiations, Plaintiffs continued to make every reasonable effort to maintain the confidentiality of Plaintiffs' trade secret and proprietary business information, including the information specifically related to Plaintiffs' Model.

61.     Plaintiffs are informed and believe, and on that basis allege, that prior to obtaining the confidential information and trade secrets regarding Plaintiffs' business, none of defendants EPSTEIN, NATH, NLG, or A&S, either individually or collectively, filed trademark or patent applications or engaged in any business in the countries in which Plaintiffs do business or advertise trademark and patent registration services.

62.     Defendants, individually and collectively, knew as a result of the confidential marketing and financial information they received from Plaintiffs and employees of HH, that Plaintiffs generated most of their revenue from certain select regions.

63.     Likewise, Defendants and other partners of NLG knew the value of the confidential trade secret and proprietary business information that they obtained from HH. Their desire to merge with and/or acquire HH showed they recognized the benefits of Plaintiffs' Model.

64.     Further, Defendants' respective agreements not to disclose the confidential information they obtained from HH or use such information to compete with HH if the merger or

Exhibit 2
0062
COMPLAINT

1  sale was not completed, shows they understood the value of Plaintiffs' trade secret information

2  and that such information derived value from not being disclosed to the public.

3

4          E.      **Defendant's Misappropriation and Unfair Competition**

5

6          65.     Shortly after leaving HH's employ, and armed with the confidential information he

7  obtained as an attorney there, Plaintiffs are informed and believe that DICKSTEIN formed

8  defendant A&S to provide foreign trademark and patent registration services nearly identical to

9  those provided by Plaintiffs.

10

11         66.     Plaintiffs are informed and believe, and based thereon allege that defendants

12  EPSTEIN, NATH, NLG and other members of NLG conspired with DICKSTEIN to form A&S.

13

14         67.     Plaintiffs are informed and believe, and based thereon allege that DICKSTEIN and

15  A&S are affiliated and work in concert and by agreement with the other Defendants to directly

16  compete against Plaintiffs.

17

18         68.     Defendants combined the confidential trade secret and proprietary business

19  information they obtained from Plaintiffs concerning Plaintiffs' Model, to determine a marketing

20  strategy for A&S and how and where A&S would advertise and do business in a virtually

21  indentical manner, vying for the same clients and prospective clients of Plaintiffs.

22

23         69.     Based on the confidential information obtained from Plaintiffs, Defendants decided

24  to advertise in the most profitable countries in which Plaintiffs did.  Defendants chose to advertise

25  A&S almost exclusively in countries where Plaintiffs advertise as "Asia Trademark, Ltd."  In

26  many cases, prior to A&S adding its advertisement to a particular country listed in the INTA

27  Membership Directory, ATL was the only firm advertising in that country in the directory.

28

Exhibit 2
0063
COMPLAINT

W02-WEST:DK4M00353164.3

70.    Defendants chose to advertise A&S in twenty-two (22) countries where Plaintiffs were already advertising in the INTA directory as ATL and where Defendants never did business prior to obtaining Plaintiffs' trade secret information regarding the countries. Of the countries where Plaintiffs pay to be listed in the INTA directory, this group of countries contains the most profitable countries. Defendants were able to "skim the cream" from Plaintiffs' list of countries through their unauthorized use of Plaintiffs' confidential financial information regarding the selected countries.

71.    Defendants further chose to advertise A&S in precisely the same unique manner that they learned from Plaintiffs. Defendants knew of Plaintiffs' confidential research, methodology and results associated with such advertising.

72.    Defendants chose to advertise A&S in precisely the same manner as Plaintiffs and in twenty-two (22) of the same countries as Plaintiffs because of the confidential, information regarding Plaintiffs' marketing strategies and most profitable jurisdictions Defendants obtained from Plaintiffs.

73.    HH also pays for a full page advertisement in the INTA directory. The advertisement highlights HH's ability to file directly in multiple countries and HH's expertise in filing cautionary notices in select regions that do not offer formal trademark registration procedures.

74.    Defendants have also copied the substance of Plaintiffs' full page advertisement in the INTA directory. Prior to Defendants' full page advertisement, which is one page before Plaintiffs', HH was the only firm in the INTA directory advertising similar expertise and contacts.

75.    This expertise and these contacts are both key aspects of Plaintiffs' Model. Without access to the confidential trade secret and proprietary information obtained from

Exhibit 2
0064

W02-WEST:DK4\400353164.3                                                      COMPLAINT

1    Plaintiffs, Defendants would not have known the value of such a marketing campaign or how to

2    profit from it.

3

4    76.    Contrary to their respective agreements and Mr. Dickstein's fiduciary duties,

5    Defendants have acted in concert, pooling their confidentially-obtained trade secret information so

6    that they could unfairly compete against Plaintiffs.

7

8    77.    The combined efforts of Defendants to use Plaintiffs' confidential trade secret

9    information to compete against Plaintiffs created a much more damaging scenario to Plaintiffs

10    than a separate attempt to compete by any of the Defendants individually would have.    The

11    confidential information known to DICKSTEIN was different than the confidential information

12    known to EPSTEIN, NATH and NLG.    Combined, the confidential information obtained by all the

13    Defendants created a complete picture of Plaintiffs' Model.

14

15    78.    As a result of his employment with HH, defendant DICKSTEIN was aware of the

16    research conducted by HH, Plaintiffs' unique advertising methods and which of the countries

17    Plaintiffs selected generated the most revenue.    However, DICKSTEIN was not intentionally

18    given access to the details of Mr. Kumar's research, or the reasoning behind Plaintiff's selection of

19    certain obscure jurisdictions.

20

21    79.    DICKSTEIN learned through his employment with HH of Plaintiffs' advertising

22    methodology.    Other firms are unaware of the profitability of Plaintiffs' advertising methodology.

23

24    80.    Defendants learned through their access to Plaintiffs' Model that Plaintiffs' unique

25    method of advertising eliminates many of the problems that can occur using advertising strategies

26    of other companies in the business of foreign trademark and patent registration.

27

28

Exhibit 2
0065

W02-WEST:DK4\400353164.3                                                COMPLAINT

81.    In addition, on information and belief, Defendants have also purposefully chosen the name "A&S Trademarks and Patents" to gain an advertising advantage over ATL.   For example, the INTA Membership Directory lists firm names alphabetically.  Thus, by choosing the name A&S, Defendants were assured to be placed *before* ATL.   This is particularly apparent where the only two such firms listed in the directory are A&S and ATL.

82.    Further, A&S registered and began using the Internet Website address "www.astrademarks.com," even though Asia Trademark. Ltd had already registered the Internet Website address www.asiatrademark.com.  On information and belief, this "typosquatting" was designed to cause confusion and unfairly compete with Plaintiffs among their target market of clients and potential clients.

83.    Plaintiffs are informed and believe, and based thereon allege, that Defendants are utilizing confidential trade secret and proprietary business information concerning, among other things, Plaintiffs' Model, in an effort to directly compete with Plaintiffs.  Moreover, Defendants are using such confidential information to copy Plaintiffs' unique marketing methods, operate in the jurisdictions that were the most profitable to Plaintiffs, and confuse Plaintiffs' potential clients.

84.    Plaintiffs are informed and believe, and based thereon allege, that along with assisting DICKSTEIN in the formation of A&S, defendants EPSTEIN, NATH and NLG are actively involved in the operation of A&S in that they contribute to A&S, among other things, financial support, legal expertise, office space, and trade secret information regarding Plaintiffs obtained from Plaintiffs, and thereby facilitate A&S's unfair competition with Plaintiffs.

85.    Prior to the negotiations surrounding the potential sale of HH to EPSTEIN, none of the Defendants advertised in the same manner as Plaintiffs.  Moreover, the only country in which NLG advertised in the INTA Membership Directory was the United States.

Exhibit 2
0066

W02-WEST:DK4\M00353164.3·

COMPLAINT

86.    Because of their access to Plaintiffs' confidential business practices, the research and expenditures which support such business practices, and the profits which have been derived from such business practices, Defendants have been able to duplicate the proprietary Model of Plaintiffs and create and operate A&S without expending the time and money that would normally have been required and which Plaintiffs had to invest to develop.

87.    The totality of the confidential business information and Model Plaintiffs sought to protect by reason of the confidentiality clause in the Letter of Intent between Plaintiffs and EPSTEIN, through the agreements with EPSTEIN, NATH and the other partners of NLG, and the fiduciary duty of DICKSTEIN was and is not otherwise readily ascertainable by others, including Plaintiffs' competitors.

88.    Plaintiffs compiled such information at great expense and effort and protected it from disclosure from employees that did not need such information, and from others outside of HH. Plaintiffs kept such information confidential through the careful monitoring of access to such information, and other reasonable steps to keep such information private.

89.    The confidential information which Defendants are using to run A&S is extremely valuable and it would be severely damaging to plaintiff if the information were disseminated further or allowed to be used freely by Plaintiffs' competitors.

90.    Plaintiffs are now informed and believe, and based thereon allege, that since defendant DICKSTEIN left HH's employ, and since negotiations for the sale of plaintiff to EPSTEIN ended, Defendants have been using Plaintiffs' confidential and proprietary information to compete with Plaintiffs.

91.    Defendants' use of the confidential information they received from Plaintiffs during the employment and negotiations described above has enabled them to enter markets they

Exhibit 2
0067
COMPLAINT

1  would otherwise not know to enter, or how to enter, without first incurring the investment and

2  research costs such ventures require.

3

4                          **FIRST CAUSE OF ACTION**

5      **(Intentional and Bad Faith Misappropriation of Trade Secrets – Cal. Civil Code §**

6                      **3426 *et seq.* Against All Defendants)**

7      92.    Plaintiffs reallege and incorporate by reference herein paragraphs 1-91, inclusive.

8

9      93.    At all times relevant to this complaint, Plaintiffs possessed confidential trade secret

10  and proprietary business information as alleged above.

11

12     94.    Defendant DICKSTEIN knew that the confidential information that he received

13  during and in connection with his employment by HH consisted of trade secrets and other

14  confidential and proprietary information belonging to Plaintiffs. The information had independent

15  economic value and was not generally known to the public or to others who could have obtained

16  economic value from the disclosure or use of the information.

17

18     95.    Plaintiffs took reasonable efforts under the circumstances to ensure and maintain

19  the secrecy and confidentiality of the information.

20

21     96.    As an employee of HH, DICKSTEIN owed a duty to Plaintiffs to maintain the

22  secrecy of Plaintiffs' trade secrets and other confidential and proprietary information.

23

24     97.    Defendants EPSTEIN, NATH, NLG, and A&S knew that the confidential

25  information they received regarding Plaintiffs in connection with the merger and/or sale

26  negotiations with Plaintiffs consisted of trade secrets and other confidential and proprietary

27  information belonging to Plaintiffs. The information had independent economic value and was

28

Exhibit 2
0068

W02-WEST:DK4M00353164.3                                            COMPLAINT

1  not generally known to the public or to others who could have obtained economic value from the

2  disclosure or use of the information.

3

4      98.    Pursuant to the various oral and written agreements and fiduciary duties alleged

5  above, defendants EPSTEIN, NATH, NLG, and A&S owed contractual and fiduciary duties to

6  Plaintiffs to maintain the secrecy of Plaintiffs' trade secrets and other confidential and proprietary

7  information.

8

9      99.    As defined in California Civil Code section 3426.1, Defendants misappropriated

10  Plaintiffs' trade secrets to their own economic benefit because they disclosed and are using

11  Plaintiffs' trade secrets without consent and at the time of said disclosure and use, Defendants

12  knew or had reason to know that their knowledge of Plaintiffs' trade secret information was

13  acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use and that

14  they acquired certain trade secret information from a person who owed a duty to the Plaintiffs to

15  maintain its secrecy.

16

17      100.    As a proximate result of Defendants' acts of misappropriation and use of Plaintiffs'

18  trade secrets, Plaintiffs have lost profits in an amount to be proven at trial. Plaintiffs will continue

19  to lose profits until Defendants are enjoined from using the trade secrets.

20

21      101.    Plaintiffs are informed and believe, and on that basis allege that Defendants have

22  been unjustly enriched by their actions, and that Plaintiffs have been correspondingly damaged in

23  an amount to be proven at trial.

24

25      102.    Plaintiffs are informed and believe, and on that basis allege that Defendants

26  committed their acts of misappropriation willfully, maliciously and in bad faith in that they knew

27  the information was proprietary and confidential to Plaintiffs, and Defendants conspired together

28  to use such information and trade secrets to unfairly compete with Plaintiffs. Accordingly,

Exhibit 2
0069

W02-WEST:DK4\400353164.3

COMPLAINT

1   Defendants' conduct justifies an award to Plaintiffs of exemplary damages pursuant to California

2   Civil Code section 3426.3(c).

3

4       103.    Defendants will continue to benefit economically while Plaintiffs will continue to

5   be correspondingly damaged unless and until Defendants are enjoined from using and/or

6   disclosing Plaintiffs' trade secrets and confidential and proprietary information.

7

8       104.    Defendants' wrongful acts are a serious and continuing threat to Plaintiffs'

9   business, reputation and goodwill.  If Defendants are allowed to continue their wrongful acts,

10  Plaintiffs will continue to suffer immediate and irreparable injury, including, without limitation,

11  loss of clients, revenue and other damages, the amount of which is not readily ascertainable, and

12  irreparable injury to Plaintiffs' reputation and goodwill, which stem, in part, from being an

13  innovator in the industry and providing services in numerous obscure jurisdictions.

14

15      105.    Consequently, Defendants should be temporarily, preliminarily and permanently

16  enjoined from misappropriating, using or disclosing Plaintiffs' confidential and proprietary

17  information and trade secrets as set forth in Plaintiffs' prayer for relief.

18

19      106.    The conduct of the individual defendants, and each of them, has been performed in

20  conscious disregard of the rights of Plaintiffs and with full knowledge that they are using

21  confidential business information which they are not entitled to use.  NLG and A&S are also liable

22  for punitive damages as a result of the conduct of the management level employees of each entity.

23  Defendant EPSTEIN is the managing partner of the San Diego office of NLG.  NATH is the

24  founder and managing partner of NLG.  Defendant DICKSTEIN is an officer of A&S.  The

25  individual defendants have personally and actively engaged in the wrongful conduct described

26  herein for the benefit of themselves, their entities and with full knowledge that such conduct is

27  wrongful and harmful to plaintiff.  Therefore, all Defendants are jointly and severally subject to

28  punitive damages for the conduct described in this complaint.

Exhibit 2
0070

-21-

COMPLAINT

1      107.   By statute, Plaintiffs are also entitled to an award of its attorneys' fees and costs

2  incurred in this action.

### SECOND CAUSE OF ACTION

#### (Unfair Competition – Cal. Bus. & Prof. Code § 17200 et seq. and

#### Under Common Law Against All Defendants)

108.   Plaintiffs reallege and incorporate by reference herein paragraphs 1-107, inclusive.

109.   Within the past four years, Defendants and each of them have engaged in the conduct described herein. As a result of the conduct described above, Defendants, and each of them, have been able to enter markets to compete with Plaintiffs only because of the confidential trade secret and proprietary business information they learned from Plaintiffs, and which they promised to keep confidential and to not use to compete with Plaintiffs. In addition, Plaintiffs are attempting to "pass off" or "palm off" their services as those of ATL.

110.   As a direct and proximate result of the conduct described herein, Plaintiffs have been damaged in an amount in excess of the jurisdiction of this court. Such damages include lost profits, loss of market share, and the lost of value of the extensive research and effort which is the foundation of the business model developed by Plaintiffs.

111.   Based solely on the expenditures of time and money which were utilized to develop the business model now being unfairly used by Defendants, Plaintiff has been damaged in an amount believed to be in excess of $1,000,000.00.

112.   In addition, Defendants' conduct in competing with plaintiff in an unfair manner, and in using Plaintiffs' confidential proprietary and trade secret information to compete with Plaintiffs are a serious and continuing threat to Plaintiffs' business, reputation and goodwill. If Defendants are allowed to continue their wrongful acts, Plaintiffs will continue to suffer

Exhibit 2
0071

-22-

1   immediate and irreparable injury, including, without limitation, loss of clients, revenue and other

2   damages, the amount of which is not readily ascertainable, and irreparable injury to Plaintiffs'

3   reputation and goodwill, which stem, in part, from being an innovator in the industry and

4   providing specialized services in numerous obscure jurisdictions.

5

6       113.  While the disgorgement of the wrongful profits and income defendants are

7   receiving as a result of their wrongful conduct will eliminate any benefit they derive from their

8   unfair competition, damages cannot make Plaintiff whole or end the irreparable harm which will

9   be and is being caused by Defendants' use of Plaintiffs' proprietary information. The value of the

10   Model is not solely found in the cost of its creation. Secret information and business models lose

11   their confidential status and continued importance when they are used by competitors and become

12   common knowledge. Such a loss is priceless and therefore, an injunction is necessary to stop such

13   irreparable harm from occurring.

14

15       114.  The conduct of the individual defendants, and each of them, has been performed in

16   conscious disregard of the rights of Plaintiffs and with full knowledge that they are using

17   confidential business information which they are not entitled to use. NLG and A&S are also liable

18   for punitive damages as a result of the conduct of the management level employees of each entity.

19   Defendant EPSTEIN is the managing partner of the San Diego office of NLG. NATH is the

20   founder and managing partner of NLG. Defendant DICKSTEIN is an officer of A&S. The

21   individual defendants have personally and actively engaged in the wrongful conduct described

22   herein for the benefit of themselves, their entities and with full knowledge that such conduct is

23   wrongful and harmful to plaintiff. Therefore, all Defendants jointly and severally are subject to

24   punitive damages for the conduct described in this complaint.

25

26                     **THIRD CAUSE OF ACTION**

27      **(Breach of Contract Against Defendants EPSTEIN, NATH and NLG)**

28       115.  Plaintiffs reallege and incorporate by reference herein paragraphs 1-114, inclusive.

Exhibit 2
0072

W02-WEST:DK4\400353164.3                                          COMPLAINT

116.    As alleged above, HH and EPSTEIN entered into a written agreement which required EPSTEIN to keep confidential all information he received from HH concerning Plaintiffs' Model, method of doing business, profits, how profits were received, which countries generated the most income, and how and which clients were serviced through the extensive research and effort of Plaintiffs.

117.    As alleged above, EPSTEIN, NATH, and (through its principals and managers) NLG also promised HH through discussions with Mr. Kumar that they would not disclose or use without authorization any confidential, trade secret, and/or proprietary business information the received during the due diligence period, and while negotiations were ongoing concerning his purchase of or merger with Plaintiffs.  They further agreed that they would not use such information to compete with Plaintiffs if an agreement were not reached for the purchase of or merger with Plaintiffs.  With respect to EPSTEIN, these promises were made to clarify, reiterate, affirm and to solidify the confidentiality provision of the Letter of Intent agreement.  No confidential information concerning Plaintiffs would have been provided to EPSTEIN, NATH and NLG absent such promises and assurances.

118.    In reliance upon the promises made by EPSTEIN, NATH and NLG, extensive, detailed, confidential information concerning Plaintiffs and their Model was provided to EPSTEIN, NATH and NLG during the period when they were negotiating the merger with or purchase of Plaintiffs.

119.    Plaintiffs are informed and believe, and based thereon allege, that defendants EPSTEIN, NATH and NLG have breached their promises to keep confidential the proprietary information concerning Plaintiffs, and their promises to not use such information to compete with Plaintiffs.  Plaintiffs are informed and believe, and based thereon allege, that Defendants are utilizing the confidential information concerning Plaintiffs to compete with Plaintiffs through their involvement with A&S.

Exhibit 2
0073

W02-WEST:1DK4\400353164.3

COMPLAINT

1   120.   As a direct and proximate result of defendants EPSTEIN, NATH and NLG's

2   breach of their respective agreements (1) to keep confidential the proprietary information

3   concerning Plaintiffs to which they had access, and (2) not to use such information to compete

4   with Plaintiffs should the merger or sale not be completed, Plaintiffs have been damaged in an

5   amount believed to be in excess of $1,000,000 and to be proven at trial.

6

7   **FOURTH CAUSE OF ACTION FOR CIVIL CONSPIRACY**

8   **(Against All Defendants)**

9

10   121.   Plaintiffs reallege and incorporate by reference herein paragraphs 1-120, inclusive.

11

12   122.   As alleged above, Plaintiffs provided to NATH, EPSTEIN and other partners of

13   NLG confidential, proprietary, and trade secret information.  Such confidential information was

14   only provided to them after they agreed to keep such information confidential and secret, and to

15   not use such information to compete with Plaintiffs.

16

17   123.   As alleged above, DICKSTEIN had access to confidential trade secret and

18   proprietary information of Plaintiffs' as a result of his employment as an associate attorney with

19   HH.  DICKSTEIN would not have been given access to such information, but for his position

20   within the firm.  As an associate of HH, he knew that the information he obtained was trade secret

21   and proprietary business information and that he had a duty to keep such information confidential.

22

23   124.   Plaintiffs are informed and believe, and based thereon allege that defendant

24   DICKSTEIN did not have the funds to establish and run A&S on his own.

25

26   125.   Plaintiffs are informed and believe, and based thereon allege that attorneys with

27   NLG, including EPSTEIN, and Mr. Robert P. Cogan, are working in agreement with DICKSTEIN

28

W02-WEST:DK4\400353164.3

Exhibit 2
0074

COMPLAINT

1   and providing legal support to A&S and facilitating DICKSTEIN's ability to utilize trade secret
2   information concerning Plaintiffs to compete with Plaintiffs.

4     126.   Plaintiffs are informed and believe, and based thereon allege, that attorneys with
5   NLG, including EPSTEIN and NATH have provided A&S and DICKSTEIN with confidential,
6   proprietary and trade secret information concerning and belonging to Plaintiffs, and that
7   DICKSTEIN has provided such confidential information to the other defendants. Together all the
8   Defendants by agreement are using their pooled confidential information and resources to unfairly
9   compete against Plaintiffs.

11    127.   Defendants' use of the confidential, proprietary and trade secret information
12  concerning Plaintiffs and belonging to Plaintiffs is wrongful and in breach of Defendants'
13  agreements and promises. Such use also constitutes unfair competition as alleged above.

15    128.   Each of the Defendants herein have engaged in conduct to further the illicit joint
16  venture known as A&S and to further their receipt of profits from this joint venture.

18    129.   Plaintiffs are informed and believe, and based thereon allege, that Defendants, and
19  each of them agreed: (1) to work together to create A&S; (2) to assist in the promotion of A&S;
20  (3) to assist in rendering A&S a profitable and successful business; (4) and to circumvent the need
21  to invest time and money in researching and creating a successful business model by stealing
22  Plaintiffs' research, business model and confidential proprietary information to create a foreign
23  trademark and patent registration firm that competes directly with Plaintiffs in a niche, regional
24  practice.

26    130.   Plaintiffs are informed and believe, and based thereon allege that Defendants and
27  each of them have engaged in conduct in furtherance of the creation of A&S and its wrongful
28  purpose. Such conduct consists of, but is not limited to: (1) investing money in A&S; (2)

Exhibit 2
0075

W02-WEST:DK4\400353164.3                     COMPLAINT

1  providing office space to A&S; (3) providing personnel to assist clients obtained through

2  advertisement in the INTA directory; and (4) providing confidential information to others

3  involved in A&S to direct decisions on where and how A&S would do business.

4

5      131.    Plaintiffs are informed and believe, and based thereon allege, that each of the

6  Defendants were aware of the conduct of the other Defendants in furtherance of A&S' unfair

7  business practices and approved of such conduct and/or facilitated such conduct.

8

9      132.    Plaintiffs are informed and believe, and based thereon allege that since the decision

10  to form A&S, Defendants and each of them have furthered the common design of wrongfully

11  competing with Plaintiffs through the use of confidential, proprietary trade secret information

12  belonging to Plaintiffs.

13

14      133.    By using Plaintiffs' confidential Model, defendants have derived a benefit without

15  incurring the expense normally associated with creating a business like Plaintiffs'. In addition, by

16  stealing Plaintiffs' confidential information and trade secrets, Defendants have avoided the need to

17  research how to do business in such foreign jurisdictions and how much profit, if any, could be

18  generated there.

19

20      134.    As a proximate and direct result of the Defendants' conduct in concert, Plaintiffs

21  have suffered and will suffer actual damages.  Such damages include the loss of the benefit

22  derived from years of research and expense in creating its proven business model, lost profits

23  derived from cornering new and previously untapped markets, the loss of the time, money and

24  effort expended developing and safeguarding a proven, confidential, and financially successful

25  Model.  The loss associated with the cost incurred in developing this Model which is now being

26  copied and used unfairly exceeds $1,000,000.00.

27

28

Exhibit 2
0076

W02-WEST:DK4\400353164.3                                        COMPLAINT

135.    Defendants' wrongful acts are a serious and continuing threat to Plaintiffs' business, reputation and goodwill. Each day Defendants use Plaintiffs' proprietary Model, they are gaining access to clients which did or might otherwise do business with Plaintiffs. In addition, Defendants are establishing relationships with such clients and establishing themselves in markets where they would not be, but for their use of Plaintiffs' proprietary information. If Defendants are allowed to continue their wrongful acts, Plaintiffs will continue to suffer immediate and irreparable injury, including, without limitation, loss of clients, revenue and other damages, the amount of which is not readily ascertainable, and irreparable injury to Plaintiffs' reputation and goodwill, which stem, in part, from being an innovator in the industry and providing specialized services in numerous obscure jurisdictions.

136.    Consequently, Defendants should be temporarily, preliminarily and permanently enjoined from misappropriating, using or disclosing Plaintiffs' confidential and proprietary information and trade secrets as set forth in Plaintiffs' prayer for relief.

137.    The conduct of the individual defendants, and each of them, has been performed in conscious disregard of the rights of Plaintiffs and with full knowledge that they are using confidential business information which they are not entitled to use. NLG and A&S are also liable for punitive damages as a result of the conduct of the management level employees of each entity. Defendant EPSTEIN is the managing partner of the San Diego office of NLG. NATH is the founder and managing partner of NLG. Defendant DICKSTEIN is an officer of A&S. The individual defendants have personally and actively engaged in the wrongful conduct described herein for the benefit of themselves, their entities and with full knowledge that such conduct is wrongful and harmful to plaintiff. Therefore, all Defendants jointly and severally are subject to punitive damages for the conduct described in this complaint.

Exhibit 2
0077

W02-WEST:DK4\400353164.3                                                                    COMPLAINT

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs seek judgment against Defendants, and each of them, as follows:

### On All Causes of Action

1.    Pursuant to Civil Code section 3426.2(a), Code of Civil Procedure section 526 *et seq.*, Business & Professions Code sections 14330, 17203 and 17535, and/or the equitable powers of this Court, Plaintiff prays that Defendants, their agents, servants, and employees, and all other persons acting in concert with them, be enjoined temporarily and preliminarily during the pendency of this action, and then permanently, as follows:

a.    Defendants shall cease to do business using Plaintiffs' trade secrets and/or confidential information of Plaintiffs including Plaintiffs' information concerning the profitability of certain markets, their client and foreign agent contacts and lists, their marketing and advertising methods, and their financial information showing cost, revenue, and profit structures.

b.    Defendants shall cease to market or advertise in the International Trademark Association ("INTA") online or future published directories (or other intellectual property groups directories or other advertising means) for services which cannot be provided without access to and/or use of Plaintiffs' trade secrets and confidential information, including advertising in the same countries or the same format and method in which Plaintiffs are currently advertising.

c.    Defendants are enjoined from responding to or forwarding any telephone call or e-mail message directed to the contact number or e-mail address that A&S currently lists in the INTA directory.

d.    Defendants are enjoined from using the domain name www.astrademarks.com and the trade name A&S Patents and Trademarks, Inc. and are enjoined further from using any other confusingly similar domain names and business/corporate names to advertise, market, or offer their services in this or any other country.

Exhibit 2
0078

W02-WEST:DK4\400353164.3

COMPLAINT

1      2.     For actual damages in an amount to be proven at trial, but which exceed

2   $1,000,000;

3      3.     For lost profits suffered by Plaintiffs, and unjust enrichment gained by Defendants

4   according to proof at trial;

5      4.     For attorneys' fees and costs of suit herein;

6      5.     For punitive and exemplary damages; and

7      6.     For such other and further relief as the Court deems just and proper.

8   **On the First Cause of Action**

9   For exemplary and/or treble damages pursuant to California Civil Code § 3426.3(c).

10  **On the Second Cause of Action**

11  For restitution in an amount to be proven trial.

12  **On the Third Cause of Action**

13  For actual damages in an amount to be proven at trial, but which exceed $1,000,000.

14  **On the Fourth Cause of Action**

15  For all the damages and injunctive relief specified in this Prayer for Relief.

16

17

18  DATED: July 6, 2007

19                  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

20

21                By   _____

22                        ROBERT S. GERBER

23                       MATTHEW W. HOLDER

24                       MICHAEL MURPHY
                Attorneys for Plaintiffs HILBORNE, HAWKIN &
                  CO.; and ASIA TRADEMARK, LTD.

25

26

27

28

-30-

Exhibit 2
0079

COMPLAINT

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### DEMAND FOR JURY TRIAL

Plaintiffs HILBORNE, HAWKIN & COMAPNY; and ASIA

TRADEMARK, LTD, a wholly-owned subsidiary of Hilborne, Hawkin & Company

respectfully demand a trial by jury on all issues which may be so tried.

DATED:  July _6_, 2007

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By _____

ROBERT S. GERBER
MATTHEW W. HOLDER
MICHAEL MURPHY
Attorneys for Plaintiffs HILBORNE, HAWKIN &
CO.; and ASIA TRADEMARK, LTD.

-31-

W02-WEST:DK4\400353164.3

Exhibit 2
0080

COMPLAINT

**EXHIBIT 3**

Via Fax To: 703-683-8396
            858-792-8946

THE
HARTFORD

August 22, 2007

Elizabeth Crupper
Nath & Associates
112 S. West Street
Alexandria, VA 22314

Ross Epstein
Nath & Associates
12264 EL Camino Real
Suite 400
San Diego, CA 92130

RE: Hartford file number YUU LP 02828
    Insured: Nath & Associates
    Claimant: Hilborne Hawkin

Dear Ms. Crupper and Mr. Epstein;

This will confirm my telephone conversations with you yesterday in which I indicated
that Hartford would provide a defense to the Nath defendants in the lawsuit pending in
the Superior Court of San Diego County, case number 37-2007-0054248, captioned,
Hilborne Hawkin & Co. v. Ira Dickstein, et al. However, following a more thorough
review of the factual allegations made in that lawsuit, I have determined that Hartford, in
fact, has no duty to defend. Hartford's analysis, leading to this conclusion, follows.

Hartford Casualty Insurance Company (Hartford) issued contracts of insurance to Nath &
Associates (Nath), containing a Business Liability Coverage (BLC) part, for annual
policy terms commencing on October 1, 2003 through October 1, 2006. In addition,
Hartford has also issued an Umbrella Liability (UL) supplemental contract for each of the
referenced policy periods.

Hartford's duty to provide a defense to its insured is determined by a comparison of the
factual allegations and circumstances set out in the complaint, to the scope of the
insurance coverage provided, as is evidenced by the words used in the contract. The duty
to defend arises if some of the alleged facts or circumstances, if proved, fall within the
risks covered by the policy. However, a defense provision set forth in an insurance
contract does not require the insurer to defend when it would not be liable under the
contract for any recovery plaintiff could possibility have in light of the factual allegations
of the complaint. See: Travelers Indemnity Company v. Obenshain, 219 Va. 44.

One Hartford Plaza
Hartford, CT 06155
Telephone 860 547 5000

Exhibit 3
0081

When this standard is applied to the facts of the instant complaint, compared to the terms of the insurance contracts issued, it is apparent that under Virginia law, Hartford has no duty to defend.

It is also clear that Virginia supplies the rules of law applicable to the interpretation of the insurance contract, since the evidence indicates that the insurance contracts were formed in the state of Virginia, where Nath has its principal place of business. The insurance contract itself recognizes that it should be construed under Virginia law because there are a number of endorsements required by the state of Virginia, including an endorsement entitled: "Important Notice to Virginia Policyholders".

The insurance contracts state, in their insuring clauses, that Hartford is obligated to pay sums the insured becomes liable to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which the insurance applies. In addition, the contracts provide that Hartford will defend the insured's against suits seeking those damages, but has no duty to defend suits that do not seek damages to which the insurance applies.

It is obvious that plaintiff's do not allege they sustained bodily injury; plaintiff's are corporate entities.

"Property damage" is defined to mean "physical injury to tangible property or loss of use of tangible property that has not been physically injured." It is equally apparent that none of plaintiff's claims seek to recovery damages because of "property damage". Paragraphs 100 through 104 of the complaint allege that plaintiff has suffered only economic loss as a consequence of the defendant's actions, such as lost profits, lost goodwill and injury to business reputation.

The term "personal and advertising injury" means injury arising only out of the eight enumerated offenses specified in the definition of that term. These offenses are: 1. false arrest, 2. malicious prosecution, 3. wrongful entry or eviction, 4. libel, slander and disparagement, 5. violation of a person's right of privacy caused by the insured's publication of material, 6. copying another's advertising idea or style of advertisement in your advertisement, 7. infringement of copyright, slogan or title of a literary or artistic work and 8. discrimination.

Of these enumerated offenses the only conceivable offense that may have been alleged in the instant complaint is "copying another's advertising idea or style of advertisement in "your" advertisement. Importantly, the word "your" is defined in the insurance contracts to mean the named insured shown in the declarations; in this case, Nath.

Thus, the critical focus of the evaluation to determine if Hartford's duty to defend has been triggered, is to examine the complaint for allegations of fact that the insured is liable for damages to plaintiffs because the insured, in its advertisement, copied the plaintiff's advertising idea or style of advertisement.

Exhibit 3
0082

Indeed, plaintiffs do allege that their style of advertisement was copied. But the complaint makes absolutely clear that it is not Nath that is charged with the copying, but the codefendant, A&S, which is not insured by Hartford. See paragraphs 71, 72, 74, 81 and 82. No reference is made whatsoever to an advertisements for Nath & Associates.

It is irrelevant that the insured defendants are alleged to have facilitated and conspired with the other defendants to injure plaintiffs. Coverage exists only if the copying of an advertising idea or style of advertisement is committed in "your" advertisement. It is not alleged that Nath's advertisement was the cause of the injury.

In addition, the duty to defend is also completely negated, in the primary insurance contracts, by the allegations appearing in paragraphs 106, 114 and 137, each of which states that the defendant's acted with full knowledge that their conduct is harmful to plaintiffs. Thus, even if it were assumed that the complaint seeks damages because of Nath's copying another's advertising idea in its advertisement, the claim for resulting damages is excluded by virtue of the language of exclusion 1 a. (2) of the primary insurance contract, which states: "This insurance does not apply to "personal and advertising injury" arising out of an offense committed by the insured...with the expectation of inflicting "personal and advertising injury".

Based upon the foregoing analysis, Hartford declines to provide a defense to Mr. Epstein, The Nath Law Group and Nath & Associates.

If you believe that Hartford has erroneously declined to provide a defense to any of its insured's, please advise me of the reasons why you believe Hartford decision is erroneous, and in that event, I would be happy to review this matter again.

Very Truly Yours,

Warren Freiman
Complex Case Manager

CC : R C M & D Inc.

Exhibit 3
0083

Gary M. Nath (DC, SB)
Ross A. Epstein (CA)
Joshua B. Goldberg (VA, DC)
Jerald L. Meyer (CA)
Robert P. Cogan (CA, DC)

Harold L. Novick (A), Of Counsel

Gregory B. Kang (DC, SB), On Sabbatical

Irvin A. Lavine, Retired
Donald M. Sandler, Retired

Patent, Trademark and Copyright Causes,
Unfair Competition, Trade Secrets,
Licensing and Litigation

## THE NATH LAW GROUP
*Attorneys at Law*
12264 El Camino Real
Suite 400
San Diego, CA 92130

TELEPHONE (858) 792-8211
FACSIMILE (858) 792-8946

E-MAIL: REpstein@NATHLAW.COM
WEB: WWW.NATHLAW.COM

Susanne M. Hopkins (CA)
Lee C. Heiman (CA)
Tanya E. Harkins (MD)
Charles D. Niebylski, Ph.D. (MD, DC)
Sheldon M. McGee (DC)
Derek Richmond (CA)
Stanley N. Protigal (DC)
H. David Starr (DC, MD)
Burman Y. Mathis, III (CA, DC)
Teresa M. Arroyo (MD)
Ari G. Zytcer (MD)
Alvin E. Tanenholtz
Matthew J. Moffa

*Practice limited to Matters and Proceedings before
Federal Courts and Agencies; not Admitted in CA

** Registered Patent Agent; not Admitted in CA

<u>VIA FACSIMILE AND US MAIL</u>

August 24, 2007

Warren Freiman
Complex Case Manager
The Hartford
One Hartford Plaza
Hartford, CT 06155

      Re:     Harford File No. YUU LP 02828
             Insured: Nath & Associates dba The Nath Law Group
             Claimant: Hilborne Hawkins & Co., et al.

Dear Mr. Freiman:

    We are in receipt of your faxed letter dated August 22, 2007 first confirming that Hartford would be providing a defense to the Nath defendants in San Diego Superior Court Case No. 37-2007-0054248 ("Action"), but then withdrawing that agreed defense in the next sentence. Needless to say, we were shocked by your sudden reversal.

    More troubling is the basis upon which you have determined that Hartford has no duty to defend. We demand that you review once again the allegations of the complaint in the Action and you will see that the Nath defendants are inexorably linked to each and every allegation brought against any and all of the defendants in the case, and in fact have been accused along side of A&S Patents and Trademarks, Inc. ("A&S") of copying the plaintiffs' ideas and style of advertising which has been alleged as a trade secret in the Action. While we vehemently disagree that Plaintiffs have a trade secret upon which to base their claims, the mere couching of allegations as intentional misconduct does not

Exhibit 4
0084

Warren Freiman
Complex Case Manager
The Hartford
2 of 2

absolve an insurance carrier from coverage or its duty to defend. As you correctly state in your August 22 letter, the mere possibility of coverage triggers Hartford's duty to defend. Clearly there is the possibility of coverage under the provisions of the insurance contract you quote arising out of the Action.

The factual allegations in the Complaint of a misappropriated "trade secret" forms the factual core of each and every cause of action as well as the basis for Plaintiffs' request for an injunction against the Nath defendants as well as A&S. At least two of the causes of action create the possibility of coverage due to a finding that the Nath defendants' conduct constituted an unintentional and/or negligent violation of the Unfair Business Practices statutes and/or were unintentionally or negligently party to some sort of "civil conspiracy" due to the possibly mistaken copying of Plaintiff's ideas and/or style of advertising. Contrary to your assertion that facilitation and conspiracy are irrelevant, the Nath defendants are actually accused, and if the Plaintiffs had their way, would be enjoined right along side A&S from copying this "trade secret" cum advertising method in their own advertising, exactly what the insurance policy was designed to cover. Otherwise there would be no basis for the injunction against the Nath defendants Plaintiffs seek.

With respect to the specific allegations you cite in your August 22 letter denying the Nath defendants a defense, these paragraphs are incorporated by reference and therefore made part of every cause of action which is brought against the Nath defendants, not just A&S. The potential for coverage under the portions of the policy you quote is absolutely real and the Nath defendants must be afforded a duty to defend and coverage from Hartford under our insurance contract.

Last, just to be sure we are discussing the same insurance policy language, please provide us with a complete copy of the insurance policy upon which you are basing your positions with regard to coverage and the duty to defend. Thank you for your prompt attention in this regard.

Meanwhile, please immediately retract Hartford's denial of coverage and its duty to defend so that we may appropriately deal with the Action.

Very truly yours,

THE NATH LAW GROUP

Ross A. Epstein

cc      Gary Nath
        Elizabeth Crupper

Exhibit 4
0085

**EXHIBIT 5**

Via fax to: 858-792-8946

THE
HARTFORD

September 17, 2007

Ross Epstein
The Nath Law Group
12264 El Camino Real
Suite 400
San Diego, CA. 92130

RE: Hartford file no. YUU LP 02828
    Insuerd: Nath Law Group
    Claimant: Hilborne Hawkin

Dear Mr. Epstein,

I have received and reviewed your August 24, 2007 letter and have once again, carefully studied the factual allegations of the instant complaint to determine if a fair reading of the complaint discloses any potential for the insured to become legally liable for damages that may be covered by insurance contract numbers 30 SBA RM7202 or 42 SBA BU0787. Hartford concludes once more, since the potential for Nath Law Group to become liable for covered damages is clearly absent, that it has no duty to provide a defense for the instant suit.

Per your request attached is a specimen copy of the business liability coverage part for all pertinent contracts of insurance issued by Hartford.

While it may be true that Nath is "inexorably linked" to each and every allegation made in the complaint of copying the plaintiffs advertising idea, this linkage alone is not sufficient to trigger Hartford's duty to defend. The definition of the conduct constituting the covered offense is: "copying, **in your advertisement**, a person's or organization's advertising idea or style of advertisement." See page 19, paragraph 15 f of the policy definitions.

This language is absolutely clear and unambiguous. It must, therefore, be alleged that the insured copied the plaintiff's idea in the **insured's advertisement**. It is not sufficient that that insured is alleged to be complicit in causing the plaintiff's advertising idea or style of advertisement to have been copied in another's advertisement. The required nexus is to the insured's advertisement; and there is not a single assertion of fact in the complaint that Nath's advertisement copied plaintiffs. There is no claim that Nath advertised at all.

If you have any further questions or continue to disagree with Hartford's assessment, please contact me.

Very Truly Yours,

One Hartford Plaza
Hartford, CT 06155
Telephone 860 547 5000

Exhibit 5
0086

Warren Freiman
Complex Case Manager

Exhibit 5
0087

JS 44 (Rev. 12/07)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**FILED**

## I. (a) PLAINTIFFS
NATH & ASSOCIATES, PLLC

## DEFENDANTS
HARTFORD CASUALTY INSURANCE COMPANY

**(b)** County of Residence of First Listed Plaintiff  San Diego
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE
LAND INVOLVED.

**CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA**

BY_____DEPUTY

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Paul Hilding, Esq., Hilding Law Firm, 501 W. Broadway, Ste. 1760,
San Diego, CA 92101

Attorneys (If Known)

**'08 CV 1567 L JMA**

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1  U.S. Government
Plaintiff

☐ 3  Federal Question
(U.S. Government Not a Party)

☐ 2  U.S. Government
Defendant

☒ 4  Diversity
(Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only)      and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☒ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury - Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | **IMMIGRATION** | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | ☐ 462 Naturalization Application | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 540 Mandamus & Other | ☐ 463 Habeas Corpus - Alien Detainee | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | ☐ 550 Civil Rights | ☐ 465 Other Immigration Actions | | ☐ 950 Constitutionality of State Statutes |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1332(a)(1)
Brief description of cause:
Breach of Contract, Breach of the Implied Covenant of Good Faith and Fair Dealing

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions)
JUDGE _____ DOCKET NUMBER _____

DATE
08/25/2008

SIGNATURE OF ATTORNEY OF RECORD
_____

**FOR OFFICE USE ONLY**

RECEIPT # 154430   AMOUNT $350   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

JAC 8/25/08

JS 44 Reverse (Rev. 12/07)

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**          Example:          U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

**UNITED STATES
DISTRICT COURT**
SOUTHERN DISTRICT OF CALIFORNIA
SAN DIEGO DIVISION

**# 154430    — TC**

**August 25, 2008
16:38:31**

**Civ Fil Non-Pris**
USAO #.: 08-1567
Judge..: M. JAMES LORENZ
Amount.:                    $350.00 CK
Check#.:   PC1019

**Total—>   $350.00**

FROM: NATH & ASSOCIATES
        VS
        HARTFORD CASUALTY